## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

ELVEN JOE SWISHER and )
WALTER O. LINDSEY, )
  )
    Plaintiffs, )    Case No. CV 06-338-S-EJL
  )
v. ) **REPORT AND**
  ) **RECOMMENDATION**
K.E. COLLINS, MIKE MEADE, et al., )
  )
    Defendants. )
_____ )

      Currently pending before the Court are a Motion to Dismiss Federal Agencies and All

Federal Employees in Their Official Capacity and for More Definite Statement (Docket No. 16),

Plaintiffs' Motion to Deny U.S. Attorney's Motion to Dismiss Federal Agencies and All Federal

Employees (Docket No. 58), a Motion to Dismiss Federal Employees Sued in Their Individual

Capacity (Docket No. 73), and Motions to Dismiss filed by Defendants Wesley Hoyt (Docket

No. 61), Duane Anderson, Michael A. Blum, Dick Brown, Dennis Dressler, Barry Georgopulos,

Robert Gilmore, A.M. Gray, Paul Hastings, Helen Hicks, Frank Kish, Dave Lewis, Mike Meade,

the National Marine Corps League, Bill Snow, and Vic Voltaggio (Docket No. 63), Don Harkins,

Roland Hinkson, the Idaho Observer, and Greg Towerton (Docket No. 75), the Idaho State

Veterans Service Program, Patrick D. Teague, and Steven Teague (Docket Nos. 97).  Also

pending are Plaintiffs' Motion for Preliminary Injunction (Docket No. 117) and Motion for

Reconsideration of the Court's Order (Docket No. 123), and two Motions to Strike filed by

**REPORT AND RECOMMENDATION - 1**

Defendants Don Harkins, Roland Hinkson, the Idaho Observer, and Greg Towerton (Docket Nos. 128 & 130).

Because the Court conclusively finds that the decisional process on the pending motions would not be significantly aided by oral argument, the Court will address the motions without a hearing. Accordingly, having carefully reviewed the record and being otherwise fully informed, the Court now enters the following Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## I.

## BACKGROUND[1]

This action arises out of the testimony of Plaintiff Elven Joe Swisher ("Swisher") as a witness in the trial of David Hinkson for several crimes, including solicitation to commit a crime of violence. *Complaint*, p. 6 (Docket No. 1); *see also U.S. v. Hinkson*, District of Idaho Case No. CR-04-127 (Docket No. 275). Swisher testified that Hinkson had solicited the murder for hire of a federal judge, an assistant U.S. Attorney, and an Internal Revenue Service agent. *Complaint*, p. 6 (Docket No. 1).

At some point during the trial, Swisher's military service record became an issue. *Id.* at pp. 7-8. Later, defense counsel for Hinkson, Defendant Wesley Hoyt, obtained some of Swisher's military records and used them, and affidavits interpreting them, to support a motion seeking to overturn Hinkson's conviction. *Id.* The issues with respect to Swisher's military records are whether he was the recipient of a medal for combat-related injuries, and which of two

---

[1] When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, facts alleged in the complaint are presumed to be true. *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007). Accordingly, the Background section cites only to facts alleged in Plaintiff's Complaint.

**REPORT AND RECOMMENDATION - 2**

Form DD-214's (one contained in Swisher's official military file and one apparently provided in connection with the Hinkson trial and in Swisher's disability benefits file with the Veteran's Administration) are accurate.

Plaintiffs allege generally that the Defendants provided to each other information about Swisher's records and conspired together to injure Plaintiffs. *See, e.g., Complaint*, ¶¶ 22, 25, 165 (Docket No. 1). More particularly, Plaintiffs allege that, as a result of these exchanges of information, Swisher's disability benefits from the Veteran's Administration ("VA") were reduced and he was ordered to return over $98,000 to the VA *Id.* at p. 8. Swisher also was expelled from the National Marine Corps League ("the League") and the Veterans of Foreign Wars ("V.F.W.") and his eligibility for the Military Order of the Purple Heart has been questioned. *Id.*

Plaintiff Lindsey was the Idaho Department Commandant for the League and he confirmed Swisher's service and awards at some point during the investigation into Swisher's service record. *Id.* at p. 9. It is alleged that Lindsey defended Swisher and his record and, as a result, was later removed from the National and State Department League billets and also suspended from the League for two years. *Id.* at pp. 9-10 & ¶¶ 31, 148.

Plaintiffs seek compensatory, nominal, exemplary, and punitive damages from Defendants as well as an order requiring the federal agency Defendants to amend Swisher's military record, prohibiting the Department of Veterans Affairs and/or Veterans Administration from discontinuing "full disability benefit payments" or reducing benefits for Lindsey or any other veterans who may testify on behalf of Plaintiffs, and reinstating Plaintiffs to their previous positions in the League and V.F.W. *Complaint*, p. 62 (Docket No. 1).

**REPORT AND RECOMMENDATION - 3**

All of the Defendants in this action have moved to dismiss Plaintiffs' claims[2] pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief may be granted, and some of the federal employee Defendants have moved to dismiss for lack of jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and (b)(2).  This Report and Recommendation will address Defendants' arguments in support of dismissal.

## II.

## STANDARDS OF LAW

On a Rule 12(b)(6) motion to dismiss, the Court must assume the truth of all material allegations in the complaint and construe them in the light most favorable to the plaintiff.  *See Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1046 (9th Cir. 2006).  However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss. *Id.*

Dismissal without leave to amend is improper though, unless it is beyond doubt that the complaint "could not be saved by any amendment."  *Id.*  Additionally, it is well established that Rule 12(b)(6) motions are viewed with disfavor, *see, e.g., Gilligan v. Jamco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997), and that a court should dismiss a case without leave to amend only in "extraordinary" cases, *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981).

Moreover, where, as here, documents are filed by a pro se plaintiff, those documents are to be "liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, ___ U.S.

---

[2]  Defendants Snow, Lewis, Volk (Docket Nos. 22, 23, 24), the Idaho Observer, Hinkson, Towerton, and Harkins (Docket No. 62) also filed Answers to Plaintiffs' Complaint.

REPORT AND RECOMMENDATION - 4

___, 127 S. Ct 2197, 2200 (2007) (per curiam) (internal quotation marks and citations omitted);

Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").[3]

"Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  Thus, the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *Id.*

The Court may consider extrinsic evidence to determine whether jurisdiction exists and may resolve factual disputes if necessary.[4]  *Thornhill Publishing Co. v. General Tel & Elect.*, 594 F.2d 730, 733 (9th Cir. 1979); *see also* Fed. R. Civ. P. 12(b)(1).  Because Plaintiffs bear the burden of establishing subject matter jurisdiction, no presumption of truthfulness attaches to the allegations of Plaintiffs' complaint and the Court must presume it lacks jurisdiction until

---

[3]  While Federal Rule of Civil Procedure 8(a)(2) does not require plaintiffs to lay out in detail the *facts* upon which their claims are based, it does require plaintiffs to provide "a short and plain statement of the claim" to give the defendants fair notice of what the claim is and the grounds upon which it is based.  *See Swierkiewicz v. Sorema, N. A.*, 534 U.S. 506, 512 (2002) (explaining that "[t]his simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims").

[4]  Defendants' motions, in part, facially attack the Court's subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.")  Thus, the Court is obligated to accept all well-pleaded factual allegations in the Complaint as true and construe them in a light most favorable to the Plaintiffs. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Nonetheless, Plaintiffs, as the party seeking to invoke the Court's jurisdiction, have "the burden of proving the actual existence of subject matter jurisdiction," and the Complaint will be dismissed if they fail to carry it.  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

**REPORT AND RECOMMENDATION - 5**

Plaintiffs establish jurisdiction.  *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Plaintiffs allege several additional facts in support of their claims in their briefing and in affidavits submitted in support of their arguments.  *See, e.g.*, *Brief in Reply & Opposition to the League Defendants' Memorandum in Support of Motion to Dismiss*, pp. 10-17 (Docket No. 83); *Swisher Affidavit in Support of Brief in Reply & Opposition to the League Defendants' Memorandum in Support of Motion to Dismiss* (Docket No. 84). When a court considers extraneous matters in deciding a Rule 12(b)(6) motion, the motion is converted into one for summary judgment.  *See* Fed. R. Civ. Pro. 12(b).  Because the Court does not wish to convert the motions to dismiss into ones for summary judgment, the declarations, affidavits, and exhibits submitted by the parties will not be considered, except as they relate to the jurisdictional issues. *See Swedberg v. Marotzke*, 339 F.3d 1139, 1146 (9th Cir. 2003) ("A Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating, preferably by an explicit ruling, that it will not exclude those materials from its consideration.").

## III.

## JURISDICTIONAL ISSUES

The first issue to consider is whether jurisdiction exists for the federal court to consider Plaintiffs' claims.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (holding that courts must first decide "as a threshold matter" whether there is jurisdiction to hear a case).

**REPORT AND RECOMMENDATION - 6**

A.      **Subject Matter Jurisdiction Over Federal Agencies & Employees in Their Official Capacities**

The Federal Agency Defendants and Federal Employees in Their Official Capacity have moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction.[5]  *Brief in Support of Motion to Dismiss Federal Agencies & All Federal Employees in Their Official Capacity*, p. 2 (Docket No. 17).  Specifically, these Defendants argue that under the doctrine of sovereign immunity, the United States and its employees acting in their official capacities cannot be sued without the consent of the United States.  *Id.*

"Sovereign immunity is jurisdictional in nature," and "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Additionally, the United States must consent to its officials being sued in their official capacities.  *See Consejo de Desarrollo Economico de Mexicali, A.C. v. U.S.*, 482 F.3d 1157, 1173 (9th Cir. 2007); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).

Plaintiffs have cited to no statutory or other waiver of sovereign immunity for any claims other than their claims under the Privacy Act of 1974.  Morever, Plaintiffs have stated that they "are only suing federal agencies for their respective violations of the Privacy Act."  *Brief in Reply and Opposition to Marine Corps' Memorandum in Support of Motion to Dismiss*, p. 8

---

[5]  Plaintiffs have named the following federal agencies and employees ("The Federal Agency Defendants and Federal Employees in Their Official Capacity") as Defendants: The Department of Veterans Affairs ("VA"); the National Personnel Records Center; John Snow, the former United States Secretary of the Treasury; R. James Nicholson, Director of the Department of Veterans Affairs; General John Hagee, Chief Officer of the United States Marine Corps; VA employees K.E. Collins, Monty Stokes, and Bill Lamb; U.S. Marine Corps officers and civilian employees Lt. Col. Karen Dowling, Chief Warrant Officer W.E. Miller, Williams Swarens, Ms. Harper, and G. Michalick; and National Archives and Records Administration employee Bruce R. Tolbert.

**REPORT AND RECOMMENDATION - 7**

(Docket No. 83).  *See also Brief in Opposition to Motion to Dismiss Federal Agencies*, p. 2

(Docket No. 57) ("[T]he [federal] agencies are being sued via their respective heads, when

known, for violations of the Privacy Act of 1974 . . . ."); *Response Brief in Support of Motion

and Supplemental Motion in Opposition to United States Attorneys' Motion to Dismiss Federal

Employees in Their Individual Capacity*, p. 4 (Docket No. 101) (clarifying that certain agency

officials "are not being sued in their individual capacities," but rather "[t]he agencies they

represent are being sued for Privacy Act violations").

        These statements indicate that Plaintiffs seek to bring claims against the federal agencies

only for alleged violations of the Privacy Act.  Thus, because Plaintiffs have identified the

Privacy Act claim as the only claim they are asserting against the federal agencies, it is

recommended to the District Court that Plaintiffs' claim for violations of 42 U.S.C. § 1985, the

Americans Against Disabilities Act ("ADA"), and the Fifth and Fourteenth Amendments, as they

relate to the federal agencies, should be dismissed.[6]

        Plaintiffs also have limited their claims against the federal employees to those brought

against the employees in their individual capacities.  *See Brief in Opposition to Motion to

Dismiss Federal Employees*, p. 2 (Docket No. 57) (stating that "[t]he individual federal

employees are being sued in their individual capacities for their personal violations of Title 42

USC § 1985" and arguing that the employees' acts are beyond the scope of their employment).

For this reason, it is recommended that the District Court also dismiss all claims against the

_____

        [6] If these claims are dismissed the only claim remaining against the federal agencies is
the Privacy Act claim asserted against the Veteran's Administration, the National Personnel
Records Center, the United States Marine Corps, and the United States Treasury.

**REPORT AND RECOMMENDATION - 8**

federal employee Defendants[7] to the extent they are named in their official capacities.

As an alternative basis for dismissal, sovereign immunity bars the civil rights claims asserted against the Federal Agency Defendants and Federal Employees in Their Official Capacity because the United States has not consented to suit under the Civil Rights Statutes, i.e., 42 U.S.C. §§ 1983, 1985.  *See Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000) (explaining that "[s]overeign immunity . . . bars §§ 1985(3) and 1986 suits brought against the United States and its officers acting in their official capacity"); *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *Unimex, Inc. v. United States Dep't of Housing and Urban Dev*, 594 F.2d 1060, 1061 (5th Cir. 1979); *Graves v. United States*, 961 F. Supp. 314, 318 (D. D.C. 1997).[8]

With regard to the Federal Employee Defendants and an official capacity suit, although *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), "authorizes a damage action based upon a violation of due process without an explicit waiver of sovereign immunity, . . . such a suit is against the employee in his individual rather than official capacity." *Holloman v. Watt*, 708 F.2d 1399, 1401-02 (9th Cir. 1983).  For this additional reason, it is recommended that any claims against the Federal Employee Defendants in their official capacities be dismissed.

---

[7]  This would effect dismissal of official capacity claims against John Snow, R. James Nicholson, General John Hagee, K.E. Collins, Monty Stokes, Bill Lamb, Lt. Col. Karen Dowling, Chief Warrant Officer W.E. Miller, Williams Swarens, Ms. Harper, G. Michalick, and Bruce R. Tolbert.

[8]  The defamation claim against these Defendants is discussed below.

**REPORT AND RECOMMENDATION - 9**

Additionally, because "*Bivens* liability is premised on proof of direct personal responsibility," *Pellegrino v. United States*, 73 F.3d 934, 936 (9th Cir. 1996), and Plaintiffs' Complaint does not allege that John Snow, R. James Nicholson, or General John Hagee took any individual action against Plaintiffs, it is recommended that the claims against these officials be dismissed for this alternative reason. *See also Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001); *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998) (stating that "there is no doctrine of respondeat superior in *Bivens*" and concluding that the plaintiff had failed to state a claim against "non-participating officials"); *Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir. 1994) (explaining that "there must be individual participation and involvement by a defendant" for liability under either 42 U.S.C. § 1983 or *Bivens*); *Habeeb v. Castloo*, 434 F. Supp. 2d 899, 911 (D.Mont. 2006).

**B.     Exhaustion of remedies and lack of subject matter jurisdiction**

The Defendants argue that Plaintiffs have failed to exhaust their administrative remedies with the VA related to Plaintiff Swisher's disability benefits before filing the present action. *See Brief in Support of Motion to Dismiss Federal Agencies and All Federal Employees Named in Their Official Capacity*, p. 13 (Docket No. 17); *see also* Docket No. 97-2, pp. 12-13; Docket No. 75-2, p. 2; Docket No. 61-2, p. 12; Docket No. 63-2, p. 15. Concomitantly, Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims because they are, at essence, a challenge to the reductions in Plaintiff Swisher's VA disability benefits.

**REPORT AND RECOMMENDATION - 10**

1.        **The Administrative Procedure**

The VA operates through 53 regional offices that accept claims and render initial

decisions.  *See* 38 U.S.C. §§ 5107(a), 5103A.  Appeals from adverse decisions go to the Board of

Veterans' Appeals ("the Board") within the VA.  *See* 38 C.F.R. § 3.103(f).

The VA has an affirmative duty to assist claimants in obtaining evidence necessary to

substantiate their claims.  *See* 38 U.S.C. § 5103A.  The VA must obtain the veteran's service-

related medical records, 38 U.S.C. § 5103A(c)(1), as well as information from other

governmental or non-governmental sources that have been adequately identified and authorized

by the claimant. 38 U.S.C. § 5103A(b),(c).  Other federal agencies have an affirmative duty to

provide information to the VA.  *See* 38 U.S.C. § 5106.[9]

The Board decides appeals only after a claimant has been given the opportunity for a

hearing.  *See* 38 U.S.C. § 7105(a).  An adverse decision at the administrative level may be

appealed to the Court of Appeals for Veterans Claims ("CAVC").  *See* 38 U.S.C. § 7261(a)(1).

The CAVC has exclusive jurisdiction to review decisions from the Board and it has the "power

to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate."  38

U.S.C. § 7252(a).  Appeals from the CAVC must be made to the United States Court of Appeals

for the Federal Circuit.  *See* 38 U.S.C. § 7292(a).  VA benefit decisions "may not be reviewed by

any other official or by any court, whether by an action in the nature of mandamus or otherwise,"

except as provided in Title 38. 38 U.S.C. § 511(a).

---

[9]  Congress reinforced these obligations in the Veterans Claims Assistance Act of 2000,
Pub.L. No. 106-475, 114 Stat.2096 (2000).

**REPORT AND RECOMMENDATION - 11**

**2.      Plaintiffs' Allegations**

Plaintiffs allege that the VA began investigating Swisher in January of 2005.  *Complaint*,

¶ 136 (Docket No. 1).  In June of that year, Swisher received a letter from the VA informing him

that it intended to discontinue his disability benefits and proposing a cut in benefits.  *Id.* at ¶¶

144-45.  Upon Swisher's inquiry, the VA informed him that the proposed actions were based on

information provided in affidavits from Defendant Miller and Lt. Col. Woodring indicating that

the form DD-214 provided by Swisher was invalid.  *Id.* at ¶ 145.  On August 12, 2005, the VA

held a hearing on the matter, which Swisher attended.  *Id.* at ¶ 146.  The VA decided to cut

Swisher's disability benefits and required him to repay $95,088.00 to the VA.  *Id.* at ¶ 180.

Swisher has initiated an appeal of this decision.  *Schultz Declaration*, ¶ 4 (Docket No. 18).

The VA's July 12, 2006 Rating Decision explained the rationale for its decision:

> Although the additional evidence received in regard to your
> disagreement with the proposed severance did show that there may
> have been some misrepresentation and incorrect statements
> contained within the testimony of Chief Warrant Officer W.E.
> Miller regarding the procedures for issuance of DD214s and
> corrections, we are finalizing the severance of service connection
> for PTSD as the preponderance of the evidence still clearly
> supports the conclusion that the second DD214 is fraudulent and
> that you did not receive the medals contained on the fraudulent
> DD214.  There is no actual documentation within your service
> records showing that you received any wounds or injuries or that
> you engaged in any covert operations.  There is no evidence of
> your claimed combat-related stressors and the establishment of
> service connection for PTSD was based on fraudulent evidence.
> The evidence clearly documents under sworn testimony from W.J.
> Woodring that he did not sign the documentation and corrected
> DD214 as shown.  There is documentation from the Department of
> Defense and Personnel Records Center showing that your original
> DD214 without the medals is the official DD214 of record and that
> the second DD214 is fraudulent and unofficial.  Although it was

> noted that clerical mistakes can occur on DD214s, it was also shown that the medals shown on the fraudulent DD214 were incorrectly written and further support the conclusion that the entire DD214 is fraudulent.

*Schultz Declaration*, Ex. 1 (Docket No. 18).

Swisher responded to the VA with a Notice of Disagreement and Motion to Vacate and a letter attaching a copy of the Complaint Swisher filed in this action. *Id.* at Ex. 2. Swisher's Notice of Agreement and Motion to Vacate repeatedly refers to the "perjured testimony" of some of the Defendants named in this action, and he seeks review of the evidence regarding his military service records. *Id.* In short, he raises almost identical issues to those raised here, and these issues involve review of the actions of many of the Defendants named in the instant action.

In addition, although Plaintiffs argue that this action is not based on the VA's decisions with respect to Swisher's disability benefits[10], they make several allegations indicating that a change in Swisher's benefits is a desired outcome of this litigation and that the alleged conspiracy was for the purpose of eliminating his benefits. Significantly, Plaintiffs seek in this action "an Order prohibiting the Department of Veterans Affairs . . . from ever again discontinuing full disability payments to Plaintiff Swisher at the Permanent and Total one hundred percent (100 %) rate and prohibiting the reduction of disability benefit for Plaintiff

---

[10]  *See, e.g.*, *Response Brief in Support of Motion and Supplemental Motion in Opposition to the United States' Motion to Dismiss Federal Employees Sued in Their Individual Capacity*, p. 6 (Docket No. 101) (stating that "Plaintiffs do not wish or have they asked for any federal court intervention regarding the reinstallation of federal earned benefits or a redetermination of their disability status"); *Reply to Defendant Hoyt's Memorandum on Motion to Dismiss*, p. 11 (Docket No. 78) (noting that "this action makes no demands for the reinstatement of benefits by the Veterans Administration") (emphasis removed).

**REPORT AND RECOMMENDATION - 13**

Lindsey or any other veterans who have or will testify for Plaintiffs during the pendency of this case." *Complaint*, ¶ 195 (Docket No. 1).

Moreover, Plaintiffs allege that "the Hinkson defense formed a conspiracy . . . to punish Plaintiff Swisher, among other things, by having his earned VA disability benefits eliminated," *Complaint*, ¶ 22 (Docket No. 1), that Defendant Volk sent copies of documents to various entities, individuals, and organizations "in order to get Plaintiff Swisher's one hundred percent (100%) earned disability benefits reduced or eliminated," *id.* at ¶ 25, that Defendant Collins "refused to provide complete copies of documents used to reduce veteran Defendant Swisher's earned disability benefits as requested," *id.* at ¶ 32, that Defendant Steven Teague has "participated in a conspiracy to deprive Plaintiff Swisher of his earned V.A. disability benefits," *id.* at ¶ 38, and that Defendants Volk, Kish, and Voltaggio have "supported the conspirators['] attempts to . . . reduce or discontinue earned V.A. disability benefits for Plaintiff Swisher," *id.* at ¶¶ 44, 47, 51.

Plaintiffs made similar allegations against Defendants Dressler, *id.* at ¶ 54, Tolbert, *id.* at ¶ 59, Dowling, *id.* at ¶ 61, Gilmore, *id.* at ¶ 63, Bill Snow, *id.* at ¶ 66, Miller, *id.* at ¶ 74, Swarens, *id.* at ¶ 76, Anderson, *id.* at ¶ 78, Harper, *id.* at ¶ 80, Blum, *id.* at ¶ 82, Hicks, *id.* at ¶ 84, the League, *id.* at ¶ 94, the Idaho Observer and Harkins, *id.* at ¶ 98, Michalick, *id.* at ¶ 100, Hoyt, *id.* at ¶ 102, Roland Hinkson, *id.* at ¶ 104, Nicholson, *id.* at ¶ 106, John Snow, *id.* at ¶ 108, the National Personnel Records Center, *id.* at ¶ 111, Hagee, *id.* at ¶ 115, Stokes, *id.* at ¶ 119, Hastings, *id.* at ¶ 125, Towerton, *id.* at ¶ 127, Georgopulos, *id.* at ¶ 129, and the Doe Defendants, *id.* at ¶¶ 72, 92.  Plaintiffs also specifically allege that Defendants have conspired to deprive

**REPORT AND RECOMMENDATION - 14**

them of their "disability benefit rights."  *Id.* at ¶ 165.  *See also Brief in Reply & Opposition to the League Defendants' Memorandum in Support of Motion to Dismiss*, p. 3 (Docket No. 83) ("Conspirators have been successful in having Plaintiff Swisher's benefits cut and direct payments to him stopped as they so conspired to do . . . leaving him without significant income for support."); *Brief in Opposition to Motion to Dismiss Federal Agencies and Employees*, p. 8 (Docket No. 57) (explaining that the only reason the VA benefits have been mentioned in this case is because of the conspirators' actions to have them discontinued).

    **3.**    **Discussion**

    To the extent Plaintiffs seek review of any determination by the VA related to Plaintiff Swisher's disability compensation, review by this Court is precluded by 38 U.S.C. § 511.  *See* 38 U.S.C. §§ 7252 and 7292[11]; *Pierre v. West*, 211 F.3d 1364, 1367 (Fed. Cir. 2000); *Zuspann v. Brown*, 60 F.3d 1156, 1158-60 (5th Cir. 1995) (construing § 511's predecessor statute).  Section 511 provides, with certain exceptions,[12] that decisions related to the provision of veterans' benefits "may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise."  38 U.S.C. § 511.

---

    [11]  38 U.S.C. § 7292(c) designates the Federal Circuit as the only Article III court with jurisdiction to hear challenges to VA determinations regarding disability benefits and this review is limited by § 511.  *See Price v. United States,* 228 F.3d 420, 421 (D.C. Cir. 2000) (per curiam) (summarizing review system), *cert. denied,* 534 U.S. 903 (2001).

    [12]  None of these exceptions are applicable here.  They include challenges to rule-making under 38 U.S.C. § 502, certain insurance questions, matters related to housing and small business loans, and review of VA decisions in the CAVC.  *See* 38 U.S.C. § 511(b)(1) - (4).

**REPORT AND RECOMMENDATION - 15**

"The courts have consistently held that a federal district court may not entertain

constitutional or statutory claims whose resolution would require the court to intrude upon the

VA's exclusive jurisdiction."  *Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000) (per

curiam).  *See also Johnson v. Robison*, 415 U.S. 361, 370 (1974) (noting that 38 U.S.C. § 211(a),

the predecessor statute to § 511,[13] was amended for the dual purpose of insulating courts and the

VA from veteran benefits litigation and of insuring uniform determinations of benefits and

application of VA policy); *Tietjen v. United States Veterans Admin.*, 884 F.2d 514, 515 (9th Cir.

1989) (affirming district court dismissal under § 211(a) of challenge to benefits determination);

H.R.Rep. No. 1166, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 3723, 3731

("Congress intends to exclude from judicial review all determinations with respect to

noncontractual benefits provided for veterans . . . .").

The Court of Appeals for the Second Circuit has emphasized that Title 38, sections 7105

and 7292, "'amply evince Congress's intent to include all issues, even constitutional ones,

necessary to a decision which affects benefits in this exclusive appellate review scheme.'"

*Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) (quoting *Hicks v. Veterans*

*Admin.*, 961 F.2d 1367, 1370 (8th Cir. 1992)).  That court concluded that "[a]lthough district

---

[13]  Section 511 was formerly codified at 38 U.S.C. § 211(a).  In 1989, § 211(a) stated, in
part:

> [T]he decisions of the Administrator on any question of law or fact
> under any law administered by the Veterans' Administration
> providing benefits for veterans and their dependents or survivors
> shall be final and conclusive and no other official or any court of
> the United States shall have power or jurisdiction to review any
> such decision by an action in the nature of mandamus or otherwise.

*Tietjen v. U.S. Veterans Admin.*, 884 F.2d 514, 515 (9th Cir. 1989).

**REPORT AND RECOMMENDATION - 16**

courts continue to have jurisdiction to hear *facial* challenges of legislation affecting veterans

benefits, . . . other constitutional and statutory claims must be pursued within the appellate mill

Congress established." *Id.* (internal citation and quotation marks omitted) (holding that the

district court lacked jurisdiction to entertain plaintiff's claims that the defendants violated his

due process rights).

The case of *Weaver v. United States*, 98 F.3d 518 (10th Cir. 1996) is instructive here.  In

*Weaver*, a veteran alleged that certain VA employees had conspired to conceal or lose his

medical records in an attempt to prevent him from receiving military-disability compensation.

*Id.* at 519.  The Court of Appeals for the Tenth Circuit examined the substance of these

allegations, which formed the basis for fraud and other tort claims against VA employees, to

determine their true nature.  *Id.* at 520.  The court found that the allegations "seek review of

actions taken in connection with the denial of [the plaintiff's] administrative claim for benefits,"

and "are, in substance, nothing more than a challenge to the underlying benefits decision." *Id.*

On this basis, the court concluded that the district court lacked subject matter jurisdiction over

the plaintiff's action.  *Id.*

In the present action, considering the nature of Plaintiffs' conspiracy claims, which in

large part rely on Defendants' alleged actions in connection with Swisher's VA benefits

determination, it is appropriate to follow the reasoning of *Weaver* and it is recommended here

that the District Court grant the dismissal of Plaintiffs' conspiracy, civil rights, and constitutional

claims to the extent they require the Court to intrude on the VA's exclusive jurisdiction.

**REPORT AND RECOMMENDATION - 17**

Courts in other jurisdictions have reached similar results.  *See Hicks*, 961 F.2d at 1370 (finding plaintiff's claim that unconstitutional retaliatory conduct was the cause of the reduction of his disability rating and benefits to be "essentially a challenge to the reduction of benefits on a constitutional basis," and determining that "[a]s a challenge to a decision affecting benefits, it is encompassed by 38 U.S.C. § 511 and is not reviewable in any manner other than by the review mechanism set forth in Chapter 72 of Title 38"); *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994) (explaining that "[a]lthough [the plaintiff's] complaints invoke provisions of the Fifth Amendment and are styled in part as constitutional actions, the courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms"); *Pappanikoloaou v. Adm'r of Veterans Admin.*, 762 F.2d 8, 9 (2d Cir.) (per curiam) ("one may not circumvent § [5]11(a) by seeking damages on a constitutional claim arising out of a denial of benefits") (collecting cases), *cert. denied*, 474 U.S. 851 (1985); *Milnes v. Tripler Army Med. Ctr.,* CIV No. 02-00365 BMK, 2007 WL 917288, *3 (D.Haw. Mar. 23, 2007); *Mehrkens v. Blank*, Civ. No. 05-1384 (RHK/JSM), 2007 WL 2247576, *5 (D.Minn. Aug. 2, 2007) (determining that plaintiff's assertion of conspiracy, concealment, and other constitutional claims against VA physicians seek review of the V.A.'s actions taken in connection with his claims for benefits, "which is essentially nothing more than a challenge to the underlying benefits decision").

In summary, the claims in the present case that relate to Plaintiff Swisher's disability benefits determination are the conspiracy claim brought under 42 U.S.C. § 1985, which alleges a conspiracy to deprive Swisher of benefits and his due process and equal protection rights, and any due process and equal protection claims brought under the Fifth and Fourteenth

**REPORT AND RECOMMENDATION - 18**

Amendments.[14]  Accordingly, it is recommended that the District Court grant Defendants'
motions to dismiss these claims for lack of subject matter jurisdiction, to the extent noted.

The same principles support a decision granting Defendants' motions to dismiss on the
basis that Plaintiffs have failed to exhaust their administrative remedies.  Administrative
remedies must be exhausted with the Board before seeking relief in court.  *Davis v. United
States*, 36 Fed. Cl. 556, 560 (1996); 38 U.S.C. § 7105(a) (review is initiated by filing a Notice of
Disagreement with the VA); *Schultz Declaration*, ¶ 4 (Docket No. 18) (stating that Swisher has
filed a notice of disagreement with the VA).  For this additional reason, it is recommended that
any claims seeking review of the VA's benefits decision, however worded, be dismissed for
failure to exhaust administrative remedies.

## C.     Jurisdiction Over Federal Employees in Their Individual Capacities

The federal employee defendants who appear to have been named in their individual
capacity are VA employees Kay Collins, Bill Lamb, and Monty Stokes; National Archive
employees Bruce R. Tolbert and D.R. Harper; and United States Marine Corps employees Karen
G. Dowling, George Michalick, William E. Miller, and William G. Swarens, (the "Federal
Employees in Their Individual Capacity").[15]

---

[14]   The defamation and Privacy Act claims, to the extent limited below, remain because
the system established by Congress currently allows benefit determinations and tort claims to
take place in separate judicial forums.  *See* 28 U.S.C. § 1346(b)(1) (providing for district court
jurisdiction over FTCA claims); 38 U.S.C. §§ 511, 7292 (providing for exclusive jurisdiction in
the Federal Circuit for limited review of VA disability determinations).


[15]   Plaintiffs have clarified that they bring only official capacity claims against former
Secretary of the Treasury John Snow, the Chief Officer of the United States Marine Corps
General John Hagee, and the National Director of Veterans Affairs R. James Nicholson.  *See*

**REPORT AND RECOMMENDATION - 19**

### 1.     Sufficiency of Service of Process

A defendant must be served with a summons and a copy of the complaint within 120 days of the filing of the complaint.  Fed. R. Civ. P. 4(m).  The failure to serve a party within the 120-day period may justify dismissal pursuant to Rule 12(b)(5).  *See English v. Krubsack*, 371 F. Supp. 2d 1198, 1201 (E.D. Cal. 2005).

Federal Employee Defendants Tolbert, Harper, Dowling, Hagee, Michalick, Swarens, Snow, and Nicholson were not served with Plaintiffs' Complaint and a summons in accord with Federal Rule of Civil Procedure 4(e)(2).  *See also* Fed. R. Civ. P. 4(i)(2)(B) (setting forth the process for serving a federal employee sued in an individual capacity); *Harper Declaration*, ¶ 3 (Docket No. 89) (stating Harper has "not been personally served with the summons or complaint"); *Michalick Declaration*, ¶ 3 (Docket No. 90); *Dowling Declaration*, ¶ 2 (Docket No. 91); *Swarens Declaration*, ¶ 2 (Docket No. 92).

The deadline for serving the Complaint on Defendants expired on December 22, 2006.  *See Order*, p. 2 (Docket No. 26).  The time for service was extended once, providing Plaintiffs with an additional forty-five days from the filing of their motion to enlarge time for service to effect service (to January 22, 2007).  *Id.*  Before the extended time for service had expired, Plaintiffs sought to serve some of the Defendants by publication.  On March 9, 2007, Plaintiffs' request was denied, without prejudice, because Plaintiffs had requested publication after certain

---

*Response Brief in Support of Motion and Supplemental Motion in Opposition to United States Attorneys' Motion to Dismiss Federal Employees in Their Individual Capacity*, p. 4 (Docket No. 101) (stating that these individuals "are not being sued in their individual capacities," but rather "[t]he agencies they represent are being sued for Privacy Act violations."  Thus, dismissal of all claims against these officials is appropriate and Defendants' various arguments in support of dismissing the claims against them will not be addressed.

**REPORT AND RECOMMENDATION - 20**

Defendants had failed to return waivers of service mailed to them. *Order* (Docket No. 109). Although Plaintiffs asserted that they had attempted personal service on some of the Defendants, they did not provide proof of these attempts with respect to the Federal Defendants. *Id.* at p. 3. The March 9th Order set forth the requirements to effect service on federal employees. *Id.*

On March 23, 2007, Plaintiffs sought reconsideration of this Order, asking that the Court find the Federal Employee Defendants in their individual capacities had been property served or, in the alterative, grant additional time to complete service. *Motion for Reconsideration*, p. 2 (Docket No. 123).[16] At essence, Plaintiffs argue that the Federal Employees in their individual capacities should be considered properly served because they have actual notice of this action, were served through their respective agencies, and are participating in this action.

Plaintiffs note that they mailed copies of the Summons and Complaint to the last known address of these employees and argue that it "is obvious that Defendants received knowledge of the suit." *See Response Brief in Support of Motion and Supplemental Motion in Opposition to United States Attorneys' Motion to Dismiss Federal Employees in Their Individual Capacity*, p. 2 (Docket No. 101). The Ninth Circuit Court of Appeals, however, requires "'substantial compliance with Rule 4.'" *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)). Moreover, "Rule 4 has generally been construed to mean that service at a defendant's place of employment is insufficient." *Id.* (explaining that "where money damages are sought through a *Bivens* claim, personal service, and not service at the place of employment, is necessary to obtain jurisdiction over a defendant in his

---

[16] The Court has not yet ruled on this Motion.

**REPORT AND RECOMMENDATION - 21**

capacity as an individual" and determining that "while serving the defendants at [their place of employment] was sufficient to establish jurisdiction over them in their official capacity, it did not suffice to establish jurisdiction over them as individuals [b]ecause a *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity," and, therefore, "the failure to perfect individual service is fatal to appellant's *Bivens* action against the named defendants").

As a competing consideration, however, it must be determined whether good cause for the delay in service has been shown. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). "At a minimum, 'good cause' means excusable neglect." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). More particularly, Plaintiffs must demonstrate the following in order to bring their excuses for failing to timely effect proper service to the level of good cause: "(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Id.* (citing *Hart v. United States,* 817 F.2d 78, 80-81 (9th Cir. 1987)).

Here, in this instant action, the Federal Employee Defendants have actual notice of the lawsuit and, indeed, have responded to the merits of the suit by filing a Rule 12(b) motion to dismiss. Additionally, Plaintiffs have consistently sought to extend the service deadline and have been diligent in their efforts to obtain personal service of the Federal Employee Defendants. *See Memorandum Supporting Motion for Reconsideration* (Docket No. 123-2). Considering these circumstances, it is recommended that the District Court deny the Federal Employee Defendants' motion to dismiss for insufficiency of service under Rule 12(b)(5),

**REPORT AND RECOMMENDATION - 22**

without prejudice to re-filing should proper service not be accomplished and any claims against these defendants remain.

### 2.      Personal Jurisdiction

Federal Employee Defendants Tolbert, Hagee, Dowling, Michalick, Miller, Harper, Swarens, Snow, and Nicholson also request dismissal of the claims against them for lack of personal jurisdiction, arguing that Plaintiffs' Complaint does not allege facts sufficient to support personal jurisdiction over them.[17]  *United States' Brief in Support of Motion to Dismiss Individual Capacity Claims*, p. 4 (Docket No. 86).  Specifically, these employees argue that the fact "the United States or its agencies, such as the Veterans Affairs Administration or the U.S. Marine Corps may have offices and contacts with Idaho is not a sufficient basis to extend jurisdiction over an agent of a principal unless the agent himself has sufficient contacts with the state of Idaho."  *Id.* at p. 3.  In short, the employees are being sued in their personal capacities, do not reside in Idaho,[18] and do not have sufficient contacts in the state to provide the Court with jurisdiction.

---

[17]  Plaintiffs have stated that Defendants Hagee, John Snow, and Nicholson are not being sued in their individual capacity.  *Response Brief in Support of Motion in Opposition to Motion to Dismiss Federal Employees Sued in Their Individual Capacity*, p. 4 (Docket No. 101).  For this reason, it is not necessary to evaluate whether the Court has personal jurisdiction over these Defendants.

[18]  Plaintiffs' Complaint alleges only that these employees are "a resident of the United States of America."  *Complaint*, ¶¶ 61, 74, 76, 80, 100, 106, 108, 115 (Docket No. 1).  None of these individuals are residents of Idaho.  *Miller Declaration*, ¶ 5 (Docket No. 87); *Tolbert Declaration*, ¶ 2 (Docket No. 88) (St. Louis, Missouri resident); *Harper Declaration*, ¶ 3 (Docket No. 89); *Michalick Declaration*, ¶ 3 (Docket No. 90) (Quantico, Virginia resident); *Dowling Declaration*, ¶ 3 (Docket No. 91) (California resident); *Swarens Declaration*, ¶¶ 1-2 (Docket No. 92) (Virginia resident).

**REPORT AND RECOMMENDATION - 23**

(a)      **Standards of Law**

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Where the motion is based on written materials rather than on an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In such cases, a court need only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. *Id.* Although the plaintiff cannot rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true. *Id.* "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

A federal court's power to exercise personal jurisdiction over a non-resident defendant is limited both by the applicable state personal jurisdiction statute (long arm statute) and the Due Process Clause. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002); *Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990). However, as the Ninth Circuit has previously recognized, the Idaho Legislature intended in adopting its long arm statute to exercise all of the jurisdiction available under the Due Process Clause. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). Thus, the state and federal limits are co-extensive, and an independent review of whether jurisdiction exists under the long arm clause is unnecessary. *See Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1194 (9th Cir. 1988).

Due process requires that in order for a non-resident defendant to be haled into court the defendant must have certain minimum contacts with the forum state such that the traditional

**REPORT AND RECOMMENDATION - 24**

notions "'of fair play and substantial justice'" are not offended.  *See Sher*, 911 F.2d at 1361

(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  Additionally, "the

defendant's 'conduct and connection with the forum State' must be such that the defendant

'should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  The focus is primarily on "the

relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S.

186, 204 (1977).

(b)      <b>General Jurisdiction</b>

States may exercise general or specific jurisdiction over non-resident defendants.  *See*

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984).  General

jurisdiction can be asserted when the defendant's activities in the forum state are "continuous

and systematic" or "substantial."  *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445,

447 (1952); *see also Lake*, 817 F.2d at 1420.  There are no facts in the Complaint to support the

exercise of general jurisdiction over the Federal Employee Defendants.  Specifically, these

Defendants' contacts with Idaho cannot be considered "continuous and systematic,"

*Helicopteros*, 466 U.S. at 416, and, therefore, the exercise of jurisdiction would not satisfy

"traditional notions of fair play and substantial justice," *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d

1387, 1391 (9th Cir. 1995).  Because "[t]he standard for establishing general jurisdiction is fairly

high and requires that the defendant's contacts be of the sort that approximate physical

presence," *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)

(internal citation and quotation marks omitted); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d

1325, 1331 (9th Cir. 1984), it is recommended that the district court decline to exercise general

jurisdiction over the Federal Employee Defendants who have asserted a challenge to personal jurisdiction.

      **(c)**        **Specific Jurisdiction**

When specific jurisdiction is asserted, a three-part test applies:  (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.  *Lake*, 817 F.2d at 1421.  The plaintiff bears the burden of satisfying the first two prongs of the test.  *Sher*, 911 F.2d at 1361.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.  If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

Purposeful availment requires some kind of affirmative conduct by the Defendants which allows or promotes the transaction of business within the forum state.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986).  Here, the allegations indicate that many of the Federal Employee Defendants simply responded to requests from third persons, including some from Plaintiff Swisher, who reside in Idaho.  Purposeful availment cannot be based on the "unilateral activity of another party or a third person."  *Burger King*, 471 U.S. at 475.  *See also OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (

**REPORT AND RECOMMENDATION - 26**

Exercise of specific jurisdiction may be appropriate, however, where a foreign act is both aimed at and has effect in the forum state.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1071 (C.D. Cal. 2004).  To meet this "effects test" for specific jurisdiction, Defendants must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state.  *Dole Food Co.*, 303 F.3d at 1112 (citation omitted).  With these principles in mind, the claims against the individual defendants will now be considered.

Plaintiffs allege in their Complaint that Defendant Tolbert of the National Personnel Records Center, on January 14, 2005, "transcribed, photocopied or a combination of both, information from Plaintiff Swisher's military records for others."  *Complaint*, ¶ 59 (Docket No. 1).  Mr. Tolbert's sole action, however, was responding to a Freedom of Information Act request from Defendant Hoyt's law firm.  *Tolbert Declaration*, ¶ 4 (Docket No. 88).  This is not enough to provide a basis for the exercise of jurisdiction over Tolbert.  *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) (stating that it is "well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts").[19]

The same reasoning applies with respect to Defendant Swarens, a National Marine Corps employee who Plaintiffs allege sent a letter to the Idaho Division of Veterans Services, Idaho Congressman Butch Otter, the FBI, and the Attorney General regarding Plaintiff Swisher's

---

[19]  At least some of the contacts between the federal employees and various Defendants and individuals in Idaho may have been at the request of Swisher.  *See Complaint*, ¶ 146 (Docket No. 1).

**REPORT AND RECOMMENDATION - 27**

military record.  *Complaint*, ¶ 76 (Docket No. 1).  If that is his only conduct, it is not enough to provide for personal jurisdiction.

Likewise, Defendants Harper and Michalick had few contacts directed at having an effect in Idaho.  Plaintiffs allege that Defendant Harper of the Marine Corps contacted the VA about possible fraudulent records and Swisher's benefits.  *Complaint*, ¶ 80 (Docket No. 1).  Harper submitted a Declaration stating that her involvement was limited to researching medical records of Swisher at the request of Idaho Congressman Butch Otter and to providing that information to William Harrison, who then wrote a letter to Swisher stating that he could not verify an injury related to active duty.  *Harper Declaration*, ¶ 5-6 (Docket No. 89).  Harper also was asked by her supervisor to obtain a copy of Swisher's DD-214 Form from the VA and she contacted the Idaho regional VA office to determine how to get a copy.  *Id.* at ¶ 7.

With respect to Defendant Michalick with the Marine Corps, Plaintiffs allege that he corresponded with the VA regarding Swisher's military record.  *Complaint*, ¶ 100 (Docket No. 1).  Michalick states that he reviewed personnel files at the request of the VA's regional office in Boise, Idaho, regarding what DD-214 form was in Swisher's original file and he sent a letter to K.E. Collins of the VA regarding the validity of the form DD-214 presented to the VA.  He also requested information from the VA to conduct his review.  *Michalick Declaration*, ¶ 5 (Docket No. 90).  Again, this is not enough to demonstrate that he committed an intentional act, which was expressly aimed at Idaho, and caused harm and which the he knew was likely to be suffered in Idaho.  *See Dole Food Co.*, 303 F.3d at 1112.  It is notable that not every "foreign act with foreseeable effects" in the forum state will support specific jurisdiction.  *Dole Food Co.*, 303 F.3d at 1112 (citation omitted).  For these reasons, it is recommended that the District Court

**REPORT AND RECOMMENDATION - 28**

dismiss the claims against Defendants Tolbert, Harper, and Michalick for lack of personal jurisdiction.[20]

It is also recommended that the District Court find it lacks jurisdiction over Defendant Dowling.  Plaintiffs allege that Lt. Col. Karen Dowling "has communicated directly with conspirators" and "has offered to fly to Idaho to help get Plaintiff Swisher."  *Complaint*, ¶ 61 (Docket No. 1).  Dowling does not recall making such a statement and does not think it likely that she did.  *See Dowling Declaration*, p. 3 (Docket No. 91).  Although Dowling's representation is not unequivocal, Plaintiffs cannot rest on the bare allegations of their Complaint where jurisdiction has been challenged.  *See Schwarzenegger*, 374 F.3d at 800; *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) (emphases added) ("*Unless directly contravened*, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.").

---

[20]   Although Plaintiffs allege that the actions of these Defendants supported the conspiracy, there are no specific facts alleged that affirmatively show these Defendants were active participants in the alleged conspiracy or came to any meeting of the minds with the other alleged conspirators.  *See, e.g.*, *Complaint*, ¶¶ 59, 76, 100 (alleging that the actions of Tolbert, Michalick, and Swarens "supported" the conspiracy or conspirators); *id.* at ¶ 80 (alleging that Harper aided and supported the conspirators) (Docket No. 1).  "[T]he law is clear that [a federal] court cannot rest a finding of jurisdiction wholly on Plaintiffs' conclusory allegations of a conspiracy."  *McCabe v. Basham*, 450 F. Supp. 2d 925-26 (N.D. Iowa 2006) (citing *Second Amend. Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)); *First Horizon Merchant Servs., Inc. v. Wellspring Capital Mgmt., LLC*, ___ P.3d ___, 2007 WL 1149980, *9 (Colo. App. June 14, 2007) (explaining that although some courts have "recognized a conspiracy theory of personal jurisdiction . . . those courts that have adopted the conspiracy theory of personal jurisdiction have held that the mere allegation of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court").

**REPORT AND RECOMMENDATION - 29**

With respect to Defendant Miller, however, it is recommended that the District Court find

personal jurisdiction exists.  Plaintiffs allege in their Complaint that Defendant Miller of the

National Personnel Records Center "signed a so-called affidavit which misrepresents and

fabricates Plaintiff Swisher's military record," and that he "distributed Plaintiff Swisher's

military record to many" and "faxed several documents to others and became involved with chief

conspirator Wesley Hoyt and others."  *Complaint*, ¶ 74 (Docket No. 1).  Miller states that he

provided information to the District Court in Idaho in response to a subpoena.  *Miller*

*Declaration*, ¶ 3 (Docket No. 89).  He then reviewed and signed an affidavit prepared by

Defendant Hoyt regarding the accuracy of Swisher's records.  *Id.* at ¶ 4.  It is Defendant Miller's

actions in submitting this affidavit that make his contacts with Idaho more substantial, and

sufficient to meet the effects test for jurisdiction.  *See, e.g.*, *Bancroft & Masters*, 223 F.3d at

1087 (finding "express aiming" *at California* because the defendant sent a letter *to Virginia* with

the alleged intent and result of disrupting the plaintiff's California business).  This is particularly

true where there is an allegation that there may be some incorrect information in Miller's

affidavit.  *See Schultz Declaration*, Ex. 1 (Docket No. 18).

## IV.

## RULE 12(B)(6) ISSUES

### A.    The Preclusion Doctrines

Defendant Hoyt argues that the VA proceedings resolved, in part, the issues raised by

Plaintiffs in this action.[21]  Hoyt acknowledges, however, that res judicata might not apply to him

---

[21] Defendants Idaho Observer, Harkins, Hinkson, and Towerton have joined in this argument.  *See Memorandum in Support of Motion to Dismiss*, p. 2 (Docket No. 75-2).

because he was not a party to the VA proceedings,[22] but he argues that all of the elements of collateral estoppel have been met. *Defendant Hoyt's Memorandum in Support of Motion to Dismiss*, p. 7 (Docket No. 61-2).

Res judicata (or claim preclusion) and issue preclusion are related doctrines used to protect the finality of decisions and prevent the proliferation of litigation.[23] *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1160 (9th Cir. 2002). "The two doctrines are based on the same general principle: After a claim or issue is properly litigated, that should be the end of the matter for the parties to that action." *Littlejohn v. United States*, 321 F.3d 915, 919 (9th Cir. 2003). The Supreme Court has held that res judicata may be applied to agency actions "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Astoria Fed. Sav. and Loan Ass'n. v. Solimino*, 501 U.S. 104, 107 (1991) (internal quotation marks omitted).

Claim preclusion prevents the relitigation of claims previously tried and decided and bars the subsequent application of all defenses that could have been asserted in a previous action between the same parties on the same cause of action, even if such contentions were not raised. *Id.* at 919-20. Traditionally four factors are considered when determining whether successive

---

[22] Res judicata requires that the party asserting the bar be identical or in privity with the party in the earlier proceeding. *See United States v. Asarco Incorp.*, 392 F. Supp. 2d 1197, 1201 (D. Idaho 2005). None of the federal defendants, the only parties who might be able to make some sort of privity claim, have asserted res judicata as a defense.

[23] Because this case involves the claim preclusive effect of an administrative decision, the most appropriate analysis presumes claim preclusion applies unless "a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (internal quotation marks omitted).

**REPORT AND RECOMMENDATION - 31**

lawsuits involve the same "cause of action":

> (1) whether rights or interests established in the prior judgment
> would be destroyed or impaired by the prosecution of the second action;
>
> (2) whether substantially the same evidence is presented in the two
> actions;
>
> (3) whether the two actions involve infringement of the same right;
> and
>
> (4) whether the two actions arise out of the same transactional
> nucleus of facts.

*Id.* (citation and internal quotation marks omitted).

For the same reasons explained above, to the extent Plaintiffs' claims rest on the VA's disability determination, claim preclusion bars those claims. However, with respect to Plaintiffs' defamation claim, these involve at least some different facts and evidence, and the alleged infringement of different rights. For these reasons, it is recommended that the District Court decline to apply the preclusion doctrines as a bar to Plaintiffs' defamation claim.

**B.      Conspiracy Claims**

     **1.      42 U.S.C. § 1985(2)**

Plaintiffs assert their 42 U.S.C. § 1985 conspiracy claim under two theories. First, Plaintiffs point to subsection two (2) of § 1985, which prohibits two or more persons from conspiring "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his

having so attended or testified."  42 U.S.C. § 1985(2).  *See Brief in Opposition to Motion to Dismiss Federal Agencies and Federal Employees*, pp. 9-10 (Docket No. 57).

In the Ninth Circuit, however, a plaintiff must have been *a party* in the action to have standing to bring a claim under this section.  *David v. United States*, 820 F.2d 1038, 1040 (9th Cir. 1987) (explaining that "[a]llegations of witness intimidation under § 1985(2) will not suffice for a cause of action unless it can be shown the *litigant* was hampered in being able to present an effective case," and "[s]ince David has not shown she was a party to the actions in which she was intimidated, she can show no injury under § 1985(2)").  *See also Blankenship v. McDonald*, 176 F.3d 1192, 1196 (9th Cir. 1999); *Lewis v. Bayh*, Case No. 05-56930, 229 Fed. Appx. 514, 515 (9th Cir. Apr. 16, 2007).[24]  Plaintiff Swisher was not *a party* to the Hinkson litigation nor can he demonstrate that any litigant was unable to present an effective case as a result of the claimed retaliation for his testimony.  Additionally, Plaintiff Lindsey had no involvement with the Hinkson trial.  For these reasons, it is recommended that Plaintiffs' claim under 42 U.S.C. § 1985(2) be dismissed for failure to state a claim upon which relief may be granted.

### 2.      42 U.S.C. § 1985(3)

Plaintiffs also assert a claim under subsection three (3) of § 1985.  *See Brief in Opposition to Motion to Dismiss Federal Agencies and Federal Employees*, p. 12 (Docket No.

---

[24]  Although other circuits have adopted a different view, *see, e.g.*, *Heffernan v. Hunter*, 189 F.3d 405, 410-11 (3d Cir. 1999) (holding "that a witness or juror may be a 'party' entitled to maintain an action under section 1985(2)"); *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119 (10th Cir. 1994), the Supreme Court has not decided the issue, *Haddle v. Garrison*, 525 U.S. 121, 125 (1998) ("express[ing] no opinion [regarding whether] intimidation claims under § 1985(2) are limited to conduct involving force or threat of force, or . . . only litigants, and not witnesses, may bring § 1985(2) claims").

57).  Section 1985(3) provides a cause of action if two or more persons conspire to deprive a

person or class of person of the equal protection of the laws.[25]  In order to state a claim upon

which relief can be granted under Section 1985(3), a plaintiff must allege the following four

elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983).

To bring a cause of action successfully under § 1985, Plaintiffs must demonstrate a

deprivation of a right motivated by "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' action."  *Sever v. Alaska Pulp Corp.*, 978 F.2d

1529, 1536 (9th Cir. 1992) (internal quotation marks omitted); *see also Sanchez v. City of Santa

Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990).  Additionally, the "[P]laintiff[s] must be a member of

the class discriminated against."  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th

Cir. 2002).[26]

---

[25]  Section 1985 may reach private action.  *See Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971); *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998) (explaining that 1985(3) was intended to reach "private conspiracies aimed at interfering with rights constitutionally protected against private, as well as official encroachment") (quoting *United Bhd. of Carpenters*, 463 U.S. at 833)).

[26]  The original purpose of § 1985(3), which was passed as the Klu Klux Klan Act of 1871, was to enforce the rights of African Americans and their supporters.  *See Sever*, 978 F.2d at 1536.

**REPORT AND RECOMMENDATION - 34**

The Ninth Circuit Court of Appeals has extended § 1985(3) to protect non-racial groups only if "the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citation and internal quotation marks omitted). *See Sever*, 978 F.2d at 1536 (explaining that § 1985(3) extends "beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights"); *Orin v. Barclay*, 272 F.3d 1207, 1217 n.4 (9th Cir. 2001).

Plaintiffs have alleged in a response brief that "Defendants actions were also motivated by class based invidiously discriminatory animus because Plaintiffs Swisher and Lindsey are both disabled American veterans who have emotional problems and have religious and political viewpoints different from those of the Defendant conspirators." *Reply & Opposition to League Defendants' Memorandum in Support of Motion to Dismiss*, p. 4 (Docket No. 83). In their Complaint, Plaintiffs allege that they are members of the Faithist church and are disabled veterans. *Complaint*, ¶¶ 9, 162 (Docket No. 1).

Although the Court of Appeals for the Ninth Circuit has not addressed the issue, other courts, including a district court in the Ninth Circuit, have determined that discrimination based on religion may suffice to support a 1985(3) claim. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) (noting that the Seventh Circuit "has clarified that otherwise 'class-based invidiously discriminatory animus' includes 'conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty'") (citing *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988)); *Diem v. City and County of San Francisco*, 686 F. Supp. 806, 809 (N.D. Cal. 1988) (noting that plaintiff "alleges a pattern of discrimination and harassment on the basis of

**REPORT AND RECOMMENDATION - 35**

religion arising to the level of an official custom or policy . . . [and,] [i]f proven, such

discrimination on the basis of religion by the city would be a violation of the Constitution

redressable under Section 1985(3)" and relying on *Padway v. Palches*, 665 F.2d 965, 969 (9th

Cir. 1982), which determined that because the school district defendant "is a subdivision of the

state, discrimination by it on the basis of sex would be a violation of the Constitution," "might be

redressed under either § 1983 or § 1985 if these provisions were otherwise appropriate," and "[i]t

is possible to use § 1985(3) to attack conspiracies against a class defined by sex"). Based on

these authorities, Plaintiffs may be able to state a claim for relief under section 1985(3) for

alleged religious discrimination, if they have sufficiently alleged the other requirements for a

claim under section 1985(3).

Plaintiffs also argue that their status as disabled American veterans places them within a

class protected by 1985(3). *Brief in Reply & Opposition to the League Defendants'

Memorandum in Support of Motion to Dismiss*, p. 5 (Docket No. 83). Plaintiffs allege in their

Complaint that Defendants were "motivated by class based individually discriminatory animus

because Plaintiffs Swisher and Lindsey are both disabled American veterans who have emotional

problems and religious and political viewpoints different from those of the Defendant

conspirators."[27] *Complaint*, ¶ 162 (Docket No. 1); *see also id.* at ¶ ¶ 133, 157.

Many courts have held that disabled individuals do not constitute a "class" within the

meaning of § 1985(3). *See, e.g.*, *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1486-87 (7th

---

[27] This allegation is sufficient to *allege* discrimination *by reason of* Plaintiffs'
membership in a religious group. *See League Defendants' Memorandum on Motion to Dismiss*,
p. 5 (Docket No. 63-2). The motions to dismiss test the sufficiency of the pleadings, not
Plaintiffs' ability to prove their claims.

**REPORT AND RECOMMENDATION - 36**

Cir. 1985) ("The legislative history of Section 1985(3) does not suggest a concern for the handicapped."); *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176-77 (10th Cir. 1983), *cert. denied,* 465 U.S. 1103 (1984); *Downs v. Sawtelle*, 574 F.2d 1, 16 (1st Cir.), *cert. denied,* 439 U.S. 910 (1978); *Miller v. City of Dixon*, 1992 WL 70340 at *5 (W.D. Ill. 1992); *Moreno v. Pennsylvania*, 1991 WL 46472 at *8 (E.D. Pa.1990); *Ahlberg v. Kansas*, 1990 WL 80925 at *3 (D. Kan. 1990); *Herhold v. City of Chicago*, 723 F. Supp. 20, 35 (N.D.Ill.1989); *Corkery v. SuperX Drugs Corp*., 602 F. Supp. 42 (M.D.Fla. 1985); *Cain v. Archdiocese of Kansas City, Kan*., 508 F. Supp. 1021, 1027 (D.Kan. 1981); *see also Story v. Green*, 978 F.2d 60, 64 (2d Cir. 1992) (noting that disability has not generally been considered a suspect or quasi-suspect classification under the equal protection clause).

In later cases, other courts "have questioned whether the enactment of the ADA, which refers to the disabled as a 'discrete insular minority . . . subject to a history of unequal treatment . . . based on characteristics that are beyond the control of such individuals,' brings the disabled within the protection of § 1985(3)." *Dargis v. Sheahan*, 2005 WL 946909, *11 (N.D. Ill. 2005) (citing *Roth v. Evangelical Health Systems Corp*., 1994 WL 388248, *8 n. 3 (N.D. Ill. 1994) (discussing the uncertainty)). *See also Lake v. Arnold*, 112 F.3d 682, 686 (3d Cir. 1997) (concluding that the "mentally retarded are, as a class, entitled to protection under § 1985(3)"); *Trautz v. Weisman*, 819 F. Supp. 282, 290-91 (S.D.N.Y.1993) (holding that, with passage of the ADA, a class of individuals with disabilities may be protected by § 1985(3)).

However, in light of *Bonner v. Lewis*, 857 F.2d 559, 565 (9th Cir. 1988), in which the Ninth Circuit Court of Appeals considered an equal protection claim and determined that "[h]andicapped individuals are not a suspect class", relying on the cases finding disabled

**REPORT AND RECOMMENDATION - 37**

individuals do not qualify for protection under section 1985(3), and considering that the Supreme Court has narrowly construed the classes of persons who are entitled to protection under Section 1985(3), *see United Bhd. of Carpenters*, 463 U.S. at 837, it is recommended that the District Court decline to extend section 1985(3)'s protection here.  *See Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176-77 (10th Cir. 1983) (expressly holding that disabled persons do not constitute a class of persons entitled to protection under Section 1985(3)).  *See also McMullin v. Ashcroft*, 337 F. Supp. 2d 1281, 1291-92 (D. Wyo. 2004); *Cloaninger v. McDevitt*, 2006 WL 2570586, *6-7 (W.D. N.C. 2006) (reasoning that "nothing in the vast body of law that has developed since 1871, when what is now Section 1985(3) was first conceived, indicates any Congressional intent to include disabled veterans in the class of person protected by that provision").

If these were the only considerations, it might be appropriate to recommend that Plaintiffs be allowed to continue with a 1985(3) claim based on alleged religious discrimination, even though the allegations in the Complaint are barely sufficient to support such a claim.  *See Johnson v. Calif.*, 207 F.3d 650, 655 (9th Cir. 2000) (district court erred in dismissing section 1985(3) claim with prejudice because it contained more than bare allegation of conspiracy and additional facts in support of the alleged conspiracy may develop as the plaintiff proceeded with discovery).  However, there is a more fundamental problem with Plaintiffs' conspiracy claims.

In their Complaint, Plaintiffs identify the object of the alleged conspiracy to be to deny Plaintiff Swisher disability benefits and to obtain new trial for Hinkson.  Plaintiffs also briefly mention that Defendants conspired to deprive Plaintiffs of their employment rights.  *Complaint*, ¶ 165 (Docket No. 1).  As explained above, the Court lacks subject matter jurisdiction over Plaintiffs' claims related to the VA's decision on Plaintiff Swisher's disability benefits.  This

**REPORT AND RECOMMENDATION - 38**

extends to Plaintiffs' conspiracy claims related to the denial of benefits.  *Mehrkens v. Blank*, Civ.

No. 05-1384 (RHK/JSM), 2007 WL 2247576, *5 (D.Minn. Aug. 2, 2007) (determining that

plaintiff's assertion of conspiracy, concealment, and other constitutional claims seek review of

the V.A.'s actions taken in connection with his claims for benefits, "which is essentially nothing

more than a challenge to the underlying benefits decision").

        In addition, Hinkson is allowed by federal statutes, *see, e.g.*, 28 U.S.C. § 2255, and the

criminal rules, *see* Fed. R. Civ. P. 29, to seek a new trial.  Thus, any lawful act by Defendants for

this purpose cannot support a conspiracy claim.[28]  Accordingly, the only potential conspiracy

claim that may be actionable is that Defendants conspired to deprive Plaintiffs of their

employment rights.  This allegation is too conclusory and attenuated to support a conspiracy

claim.

        Further, Plaintiffs have not sufficiently alleged the deprivation of any property interest.

Their membership in the League, a private association,[29] does not confer a property interest

---

        [28]  Defendant Hoyt also argues that "the decision to terminate Swisher's VA benefit was
the result of lawful VA proceedings," and because there was no agreement to commit an
unlawful act, there can be no claim of conspiracy.  *See Defendant Hoyt's Memorandum in
Support of Motion to Dismiss*, pp. 8-10 (Docket No. 61-2).  This argument, however, relies on
criminal case law providing that "the essence of a conspiracy is an agreement to commit an
unlawful act."  *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (citation and internal
quotation marks omitted).  The civil case cited by Hoyt was determined on summary judgment
based on the facts of that case.  *See Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983).

        [29]  The League is not a government agency.  Although federally chartered, it is a not-for-
profit organization created for past and present members of the United States Marine Corps to
"effectively promote the ideals of American freedom and democracy, voluntarily aiding and
rendering assistance to all Marines and former Marines and to their widows and orphans; and to
perpetuate the history of the United States Marine Corps and by fitting acts to observe the
anniversaries of historical occasions of particular interest to Marines."  *See* Marine Corps
League History on the Marine Corps League Website,
http://www.mcleague.com/mdp/index.php?

**REPORT AND RECOMMENDATION - 39**

protectable by § 1985(3).  *See Moore v. Hyche*, 761 F. Supp. 112, 114 (N.D. Ala. 1991) (holding

that student had no liberty or property interest in membership in high school club); *Price v.

Young*, 580 F.Supp. 1, 2 (E.D. Ark. 1983) (determining that "[m]embership in the National

Honor Society does not give rise to a property interest which entitles one to due process of

law"); *Hartung v. Audubon Country Club, Inc*., 785 S.W.2d 501, 503 n. 1 (Ky.App. 1990)

(explaining that "due process is protection against state action" and the court fails " to see its

relevance in disputes between a voluntary private social club and its members").

Moreover, claims of injury to reputation also cannot provide a basis for a civil rights

conspiracy claim.  *See Paul v. Davis*, 424 U.S. 693, 711 (1976); *Shakespeare v. Wilson*, 40

F.R.D. 500, 505 (S.D. Cal. 1996); *see also Complaint*, ¶ 22 (Docket No. 1) (listing as a goal of

the conspiracy to "discredit and defame Swisher").

Finally, to prove a conspiracy between private parties and the government under § 1983,

an agreement or "meeting of the minds" to violate constitutional rights must be shown.  *See

Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983); *Hernandez v. Joliet Police Dep't*, 197 F.3d

256, 263 (7th Cir. 1999) (stating that "conspirators must act with a single plan, the general nature

and scope of which is known to each would-be conspirator").  A claim under 1985 must allege

facts to support the allegation that defendants conspired together; "[a] mere allegation of

conspiracy without factual specificity is insufficient."  *Karim-Panahi v. Los Angeles Police*

---

module=ContentExpress&func=display&ceid=1&MDPROSID=fa0094282bdae24158f79e7b5fd
baf88 (site last visited September 7, 2007).  *See also Doron Precision Systems, Inc. v. FAAC,
Inc*., 423 F. Supp. 2d 173, 179 n.8 (S.D. N.Y. 2006) (quoting Fed. R. Evid. 201(b) (explaining
that "[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of
information publicly announced on a party's website, as long as the website's authenticity is not
in dispute and 'it is capable of accurate and ready determination'")).

*Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).  Further, "a section 1985 claim will not lie against a person who has merely furnished information to officials to conduct an investigation." *Benevidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983).

Plaintiffs' factual allegations against several Defendants are limited to a claim that their actions "supported" or "aided" the conspiracy or conspirators and not that they personally agreed to and joined the conspiracy.  *See, e.g.*, *Complaint*, ¶ 32 (Collins), ¶ 119 (Stokes), ¶ 121 (Lamb), ¶ 59 (Tolbert), ¶ 84 (Hicks), ¶ 82 (Blum), ¶ 78 (Anderson), ¶ 76 (Swarens), ¶ 80 (Harper), ¶ 100 (Michalick).  The conspiracy claims against other Defendants have been made based simply on allegations that they failed to prevent other Defendants' wrongs and thus aided the conspiracy. *See id.* at ¶ 29 (Georgopulos), ¶ 86 (Gray), ¶ 124 (Hastings), ¶ 84 (Hicks).  Because Plaintiffs have not sufficiently alleged a meeting of the minds with respect to these Defendants, it is recommended that the claims against them be dismissed.  *See Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (requiring complaint to allege "evidence of a conspiracy and an act in furtherance of that conspiracy").

For all of these reasons, it is recommended that Plaintiffs' 1985(3) claim be dismissed.[30]

---

[30]  Plaintiffs also argue in their briefs that Plaintiffs are seeking damages resulting from the conspirators' "retaliation against Platiniff Swisher as a federal witness" and damages resulting from the conspirators' retaliation against Plaintiff Lindsey.  *Response Brief in Support of Motion to Dismiss Federal Employees Sued in Their Individual Capacity*, p. 10 (Docket No. 101).  As explained, Plaintiffs lack standing as a party to the Hinkson trial to bring a claim for conspiracy for witness retaliation under § 1985(2).  Thus, the extent Plaintiffs are seeking to allege only the retaliation as the object of the conspiracy, and not the changes to Swisher's VA benefits, they still cannot state a claim for relief under § 1985.

**REPORT AND RECOMMENDATION - 41**

**C.      42 U.S.C. § 1983**

Although Plaintiffs alleged that Defendants acted "under color of law," *Complaint*, ¶¶ 8,

28, 54, 169, their Complaint does not specifically cite to 42 U.S.C. § 1983 as a basis for their

claims.  It was not until Plaintiffs filed a reply brief on February 14, 2007, that they realized they

failed to list section 1983 in their Complaint.  *See Reply Brief to Defendant Hoyt's Memorandum*

*in Support of Motion to Dismiss*, p. 4 (Docket No. 78).  *See also Brief in Reply & Opposition to*

*the League Defendants' Memorandum in Support of Motion to Dismiss*, pp. 7, 9 (Docket No. 83)

(alleging that "the State actors and private parties acted under color of law and deprived

Plaintiffs of the equal protection of the laws," stating Plaintiffs' Complaint sufficiently sets forth

claims under § § 1983 and 1985 of Title 42, and asserting that many of Defendants' acts "were

performed under color of law and in fact, violated the Fourteenth Amendment").

Even though Plaintiffs did not mention section 1983 in their Complaint, they are not

necessarily precluded from using this statute if the pleadings establish the essential elements of

the claim.  *See Bowers v. Campell*, 505 F.2d 1155, 1155 n.2 & 1157 (9th Cir. 1974) (declining to

require a claimant to specifically cite § 1981 to state a claim, especially because respondents

were fully aware of her reliance on that section before summary judgment motions were filed).

To state a § 1983 claim, Plaintiffs must allege that they have been deprived of a right

secured by the Constitution and laws of the United States and that the deprivation was

committed by a person acting under color of state law.[31]  *West v. Atkins*, 487 U.S. 42, 48 (1988);

---

[31]  42. U.S.C. § 1983 provides:
> Every person who, under color of [state law] . . . subjects, or
> causes to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the

**REPORT AND RECOMMENDATION - 42**

*Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).  "Private persons, jointly engaged

with state officials in the challenged action, are acting 'under color' of law for purposes of 1983

actions."  *Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir. 1989) (internal quotation

omitted).  *See also United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1540 (9th

Cir. 1989); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (explaining that "to act 'under color of'

state law for § 1983 purposes does not require that the defendant be an officer of the State";

rather "[i]t is enough that he is a willful participant in joint action with the State or its agents.

Private persons, jointly engaged with state officials in the challenged action, are acting see

"under color" of law for purposes of § 1983 actions").

> However, it is not sufficient to participate jointly with a state's agents in *any* act, but
rather it must be "an official act."  *Dennis*, 449 U.S. at 187.  In other words, the joint action must
be of a type which would subject the state agent to liability under Section 1983.  Here, the State
is not subject to liability under § 1983 as Plaintiffs have conceded that "the state cannot be sued
for Privacy Act violations, [and] Plaintiffs have not sued the state for anything else."  *Response
to Memorandum of Defendants' Motion to Dismiss Idaho Division of Veterans Services'
Employees*, pp. 2, 3 (Docket No. 118).  In addition, Plaintiffs have not alleged an *official* act by
the state in which the other Defendants joined.  Rather, they have made several claims against
state employees, whom they argue have acted in their personal capacity.  *See Complaint*, ¶¶ 133-
143 (Docket No. 1); *See Response to Memorandum of Motion to Dismiss IDV Employees*, p. 13

---

Constitution . . . shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress.
*See Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations
omitted) ("Section 1983 . . . creates a cause of action for violations of the federal Constitution
and laws.").

**REPORT AND RECOMMENDATION - 43**

(Docket No. 13) (asserting claims against Defendants Patrick and Steven Teague in their personal capacities).

Moreover, in order to invoke this Court's jurisdiction under Section 1983, pursuant to 28 U.S.C. § 1331, Plaintiffs must allege facts sufficient to establish a deprivation of a right, privilege or immunity guaranteed to him by the law. *West v. Atkins*, 487 U.S. at 47.  As explained below, Swisher has not sufficiently alleged the deprivation of a constitutional right and, thus, cannot sufficiently allege a § 1983 claim.[32]  For these reasons, it is recommended that the District Court dismiss Plaintiffs' § 1983 claim to the extent one has been properly alleged.

**D.      Due Process**

It is unclear from Plaintiffs' Complaint whether they are asserting a due process claim as part of the conspiracy claim or as a freestanding claim under the Fifth and Fourteenth Amendments.[33]  To establish a claim for violation of due process Plaintiffs must allege and prove the existence of state action and a deprivation of a property interest.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577; *Duncan v. State of Louisiana*, 391 U.S. 145, 147 (1968). Additionally, the due process clause "protects individual rights from government action, not

---

[32]  Plaintiffs' defamation claim does not provide a basis for a § 1983 claim because § 1983 provides the statutory authorization to redress violations only of *federal* civil rights, not state-based rights.  *See Beardslee v. Woodford*, 395 F.3d 1064, 1068 (9th Cir. 2005) (discussing elements of § 1983 claim).

[33]  Plaintiffs' claim of due process states that Defendants "*conspired* to deprive Plaintiffs" of their employment rights and disability benefit rights.  *Complaint*, ¶ 165 (Docket No. 1) (emphasis added).  Plaintiffs also claim that Defendants have violated their rights to due process. *See, e.g.*, *Complaint*, p. 10 (Docket No. 1) (alleging that Defendant Collins has refused to provide complete copies of documents used to reduce Swisher's disability benefits and that this refusal violated Swisher's right to due process).

**REPORT AND RECOMMENDATION - 44**

private action." *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 749 (9th Cir. 2003). For this reason, any due process claim Plaintiffs' seek to assert against the private Defendants and any non-state actor, should be dismissed.

Moreover, even if Plaintiffs can assert a due process claim against the state actors, to "have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). This, Plaintiffs have failed to adequately allege. Accordingly, it is recommended that Plaintiffs' claims of due process violations be dismissed.

## 1.     Due Process Claims Against Federal Employees

Moreover, the claims against the Federal Employees on the basis of either the Fifth or Fourteenth amendments should be dismissed because the Supreme Court has not extended the basis for a *Bivens* cause of action where alternative remedies are available. *See Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 72-74 (2001). For example, allegations of due process violations in the Social Security Administration's denial of disability benefits do not support a constitutional claim because the Social Security has provided a comprehensive remedial scheme to address these issues. *See Bush v. Lucas*, 462 U.S. 367, 388 (1983). Similarly, the VA has set up a comprehensive scheme providing "meaningful remedies against the United States." *Id.* at 368. The VA permits veterans to raise constitutional claims in connection with the administration of benefits and to seek judicial review of those decisions in the CAVC. *See* 38 U.S.C. § § 7252(a), 7261(a), 7291, 7292(c); *see also* discussion at *supra* part III.B. Accordingly, dismissal of the due process claims against the Federal Employees in their personal capacities is

**REPORT AND RECOMMENDATION - 45**

appropriate, *see Hicks*, 69 F.3d at 969 (holding that a *Bivens* action against a federal employee

was not appropriate because of the comprehensive, remedial structure of Title 38 of the United

States Code), and it is recommended that the District Court do so.

### 2.      Qualified Immunity for Federal Employees

Qualified immunity protects government officials and employees performing

discretionary functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Its purpose is to shield officers from

"undue interference with their duties and from potentially disabling threats of liability." *Id.* at

806.  "Unless the plaintiff's allegations state a claim of violation of clearly established law, a

defendant pleading qualified immunity is entitled to dismissal before the commencement of

discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).[34]

In evaluating qualified immunity, courts apply a two-part test.  The first step is

determining whether plaintiffs have asserted a violation of a constitutional right.  *Galvin v. Hay*,

361 F.3d 1134, 1139 (9th Cir. 2004), *amended & superseded on other grounds*, 374 F.3d 739

(9th Cir. 2004).  If plaintiffs have not asserted a violation of a constitutional right, then the

inquiry is complete and the defendant is entitled to immunity.  *Saucier v. Katz*, 533 U.S. 194,

201 (2001).  If the first requirement is satisfied, courts next "examine whether defendants'

actions violated 'clearly established statutory or constitutional rights of which a reasonable

---

[34]  Qualified immunity amounts to "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. at 526.

**REPORT AND RECOMMENDATION - 46**

person would have known." *Galvin*, 361 F.3d at 1139 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  A law or right is clearly established if in the light of pre-existing law, the unlawfulness is apparent. *Id.*  Even if the law or right alleged to have been violated is found to be clearly established, "if the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205.

### (a)       Constitutional Rights

Plaintiffs' Complaint alludes to violations of the Fifth and Fourteenth Amendment.  The Fourteenth Amendment by its terms applies only to states, and thus is not a source for *Bivens* claims against federal employees.  With respect to the Fifth Amendment, Plaintiffs plead no specific facts capable of supporting their allegations that federal employees violated their constitutional rights.  To the extent that Plaintiffs' allege that federal employees violated Fifth Amendment due process rights in connection with the severance of disability benefits, their challenge to the loss of VA benefits is reviewable only within the exclusive review procedure set forth in Title 38, United States Code, as discussed in Section III.B above.

Additionally, even assuming that Swisher has a property interest in his VA benefits, he has not demonstrated a legally sufficient constitutional due process claim because "the negligent or intentional deprivation of property through the random and unauthorized acts of a state or federal employee does not constitute a deprivation of due process if 'a meaningful postdeprivation remedy for the loss is available.'" *Stuto v. Fleischman*, 164 F.3d 820, 825 (2d Cir. 1999) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  Here, postdeprivation remedies are available to Swisher to contest the severance of his disability benefits.  *See* 38

**REPORT AND RECOMMENDATION - 47**

U.S.C. § 7104 (benefits decisions made by the Secretary may be appealed to the Board of Veterans' Appeals).

Plaintiffs also allege damage to their reputations as a result of the alleged defamation by Defendants. *See, e.g.*, *Complaint* at ¶ 10 (Docket No. 1). However, these claims do not support a deprivation of any constitutionally protected right because injury to reputation by itself is not a deprivation of a constitutionally protected liberty interest. *Siegert v. Gilley*, 500 U.S. 226, 233-34(1991) (citing *Paul v. Davis*, 424 U.S. 693, 708-709 (1976)). Moreover, defamation resulting in economic damages from loss of potential employment and other out of pocket loss is also not a deprivation of a constitutionally protected liberty interest. *See Siegert*, 500 U.S. at 234. Thus, because Plaintiffs allegations of injury to reputation do not reach constitutional thresholds, they may not be pursued in a *Bivens* action.

For this additional reason, it is recommended that the constitutional claims against the federal employees in their individual capacities be dismissed.

## E.    Violation of League Bi-laws

Plaintiff Swisher argues that the League Defendants[35] have violated the League By-Laws Rights of Members (Sections 904, 905, 910, and 912). *Complaint*, ¶ 11 (Docket No. 1). Although not specifically set forth as such in Plaintiffs' Complaint, this allegation may be considered a breach of contract claim, *see, e.g.*, *Garvey v. Seattle Tennis Club*, 808 P.2d 1155, 1157 (Wash. 1991) (explaining that "[t]he relationship between a social club and its members is

---

[35]   The League Defendants include Duane Anderson, Michael A. Blum, Dick Brown, Dennis Dressler, Barry Georgopulos, Robert Gilmore, A.M. Gray, Paul Hastings, Helen Hicks, Frank Kish, Dave Lewis, Mike Meade, the National Marine Corps League, Bill Snow, and Vic Voltaggio.

**REPORT AND RECOMMENDATION - 48**

one of contract"), or a request for review of whether the League followed its own rules, *Hartung v. Audubon Country Club, Inc.*, 785 S.W.2d 501 (Ky.App. 1990) (holding that judicial review of social club's determinations as to club member relationship was limited to enforcement of the organization's own rules). Thus, because Plaintiffs may be able to allege a claim for breach of contract, it is recommended that they be allowed to amend their Complaint to set forth a claim against the League for the alleged violation of its by-laws.[36]

## F.   Defamation

Plaintiffs claim that they have been libeled, slandered, and defamed by Defendants. *Complaint*, p. 8 (Docket No. 1). A claim for defamation requires evidence of the following:

> 1. That the [defendant] published or communicated ... a statement or statements about the [plaintiff]; 2. That the statements were false in a material respect; 3. That the [defendant] knew of the falsity of the statements, or acted with a reckless disregard for their truth; 4. That the statements reflected adversely upon the [plaintiff's] character, integrity, good name and standing in the community in that the statements impugned his credit worthiness; 5. That the defamatory statements caused damage to the [plaintiff]; and 6. The nature and extent of the damages, and the dollar amounts thereof.

*Eggleston v. Klemp*, Case No. CV 06-218-N-EJL, 2007 WL 1468686, *2 (D.Idaho May 18, 2007) (quoting *Student Loan Fund of Idaho, Inc. v. Duerner*, 951 P.2d 1272, 1279 (1997)).

---

[36] The League has argued that the Court should decline to exercise supplemental jurisdiction over this claim. *See League Defendants' Memorandum in Support of Motion to Dismiss*, p. 13 (Docket No. 63-2) (citing 28 U.S.C. § 1367(c)(3) (allowing for a court to decline to exercise jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction)). However, because other claims remain in this action, such as the Privacy Act claim over the Federal Agency Defendants and the defamation claims against other Defendants, the exercise of supplemental jurisdiction is still appropriate.

**REPORT AND RECOMMENDATION - 49**

1.      **Federal Employees**

The FTCA provides the only waiver of sovereign immunity for tort claims against the

federal government.  *See* 28 U.S.C. § 1346(b).  As an initial matter, federal agencies cannot be

sued under the Federal Tort Claims Act, *see FDIC v. Meyer*, 510 U.S. 471, 476 (1994); the

United States is the only proper defendant in an action brought under 28 U.S.C. § 1346(b).

Thus, Plaintiffs' defamation claims against the agencies of the United States and its employees

are barred by the Federal Tort Claims Act, 28 U.S.C. § 2680(h).  *See Billings v. United States*, 57

F.3d 797, 799 (9th Cir. 1995) (explaining that federal employees are immune from tort suits for

actions taken in the scope of their employment).  *Roundtree v. United States*, 40 F.3d 1036, 1039

n. 2 (9th Cir. 1994) (noting that defamation claim against the United States was barred by the

express language of § 2680(h)).  Moreover, any tort claim must have been submitted first to the

appropriate federal agency for administrative settlement or denial, *see* 28 U.S.C. § 2401(b);

*Dyniewicz v. United States*, 742 F.2d 484, 485 (9th Cir. 1984), and there are no allegations in the

Complaint that this was done.

Additionally, the Federal Employees Liability Reform and Tort Compensation Act of

1988, 28 U.S.C. § 2679, ("the Westfall Act"), provides immunity for tort actions against federal

employees acting within the scope of their office or employment.  28 U.S.C. § 2679(b)(1).

*Adams v. United States*, 420 F.3d 1049, 1052 (9th Cir. 2005); *United States v. Smith*, 499 U.S.

160 (1991).  The FTCA allows the United States to substitute itself for the government employee

as the defendant "[u]pon certification by the Attorney General that the defendant employee was

acting within the scope of his office or employment at the time of the incident out of which the

**REPORT AND RECOMMENDATION - 50**

claim arose."  28 U.S.C. § 2679(d)(1), (2)[37]; *see also Adams v. U.S.*, 420 F.3d 1049, 1051 (9th

Cir. 2005).

The United States has provided a certification that federal employees Tolbert, Harper,

Dowling, Hagee, Michalick, Miller, Swarens, Snow, Collins, Lamb, Stokes, and Nicholson were

acting within the course and scope of their employment at the time of the incidents alleged in

Plaintiffs' Complaint.  *See Certification of Scope of Employment Under 28 U.S.C. § 2679(d)*, p.

2 (Docket No. 93).  Although constitutional claims are outside the purview of the Federal Tort

Claims Act, *see* 28 U.S.C. § 2679(b)(2)(A), Plaintiffs' defamation claims fall squarely within its

provisions.  For this reason, it is recommended that the District Court grant the Federal

Defendants' requested dismissal of the defamation claims against all agencies and the employees

in both their personal and official capacities.  *See Billings v. United States*, 57 F.3d 797, 799-801

(9th Cir. 1995) (determining that "[o]nce the United States was substituted for [the defendant],

the district court properly dismissed [the] claims pursuant to Fed. R. Civ. Proc. 12(b)(1) for lack

of subject matter jurisdiction) (citing 28 U.S.C. § 2679(d)(4) and (5)).

## 2.      Defendant Hoyt

Defendant Hoyt asserts truth as a defense to Plaintiffs' defamation claim, *see* Idaho Code

§ 18-4803, because the information allegedly disseminated by Hoyt was deemed true at an

administrative hearing, i.e., by the VA.  However, because the VA's determination is on appeal,

---

[37]  Section 2679(d) provides: "Upon certification by the Attorney General that the
defendant employee was acting within the scope of his office or employment at the time of the
incident out of which the claim arose, any civil action or proceeding commenced upon such
claim in a United States district court shall be deemed an action against the United States under
the provisions of this title and all references thereto, and the United States shall be substituted as
the party defendant."

**REPORT AND RECOMMENDATION - 51**

and because it is unclear that the VA's determination will decide the truth of every comment attributed to Hoyt, this claim should survive the motion to dismiss.

Hoyt also argues that his statements were made in the course of judicial proceedings and are privileged. *See Defendant Hoyt's Memorandum on Motion to Dismiss*, pp. 13-14 (Docket No. 61-2) (citing *Richeson v. Kessler*, 73 Idaho 548, 552, 255 P.2d 707, 709 (1953), which states that "defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will not support a civil action for defamation although made maliciously and with knowledge of its falsity").

Plaintiffs provided an example of an article that attributes statements to Hoyt. *See Swisher Affidavit in Support of Brief in Opposition to Motion to Dismiss*, Ex. F (Docket No. 57-2). Hoyt argues that because the article states he made statements "in a motion for a new trial," and in "court files," these statements are privileged. However, the question of whether the communications arose "in the due course of a judicial proceeding" and were "reasonably related to that judicial proceeding," *Malmin v. Engler*, 124 Idaho 733, 736, 864 P.2d 179, 182 (Ct. App. 1993), are questions of fact. *See id.* (resolving these issues on summary judgment).

Although Swisher submitted a copy of one newspaper article that indicates Hoyt's comments were made in court papers, it is not clear that this is the only communication upon which Plaintiffs rest their defamation claim against Hoyt. *See, e.g.*, *Reply Brief to Defendant Hoyt's Motion to Dismiss*, p. 12 (Docket No. 78). Moreover, the Court has declined to convert the motions to dismiss into ones for summary judgment and, therefore, has limited its review to a test of the allegations contained in Plaintiffs' Complaint and not to their ability to establish the

**REPORT AND RECOMMENDATION - 52**

allegations as a factual matter.  For all of these reasons, it is recommended that the District Court

deny Defendant Hoyt's Motion to Dismiss Plaintiffs' defamation claim.

### 3.      Idaho Observer & Don Harkins

Defendants Idaho Observer and its editor, Don Harkins, request dismissal of the

defamation claim against them based on Idaho Code § 6-713, which provides:

> A privileged publication in a newspaper which shall not be
> considered as libelous is one made:
>
> (1)  In the proper discharge of an official duty.
>
> (2)  In any publication of or any statement made in any legislative
> or judicial proceeding.
>
> (3)  In a communication, without malice, to a person interested
> therein, by one who is also interested, or by one who stands in
> such relation to the person interested as to afford a reasonable
> ground for supposing the motive for the communication innocent,
> or who is requested by the person interested to give the
> information.
>
> (4)  By a fair and true report, without malice, of a judicial,
> legislative or other public official proceeding, or of anything said
> in the course thereof, or of a charge or complaint made by any
> person to a public official, upon which a warrant shall have been
> issued or an arrest made.

As with the claims against Defendant Hoyt, applying this section to bar Plaintiffs' claims

would require the Court to review all of the articles published by Defendants and to make factual

determinations as to whether the communication was made with malice.  Although Defendants

may be able to prevail on this defense at a later time, at the present time the concern is with the

sufficiency of Plaintiffs' factual allegations, not their ability to establish every element of their

claim.  Plaintiffs have alleged that Defendant Harkins and the Idaho Observer published

information, in the newspaper and on the internet, and "editorialized" about Swisher.

**REPORT AND RECOMMENDATION - 53**

*Complaint*, ¶ ¶ 96, 97 (Docket No. 1).  Plaintiffs also allege that "the publication of may libelous communications by the Defendants . . . were false and made with malice."  *Id.* at ¶ 183.  These allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss and it is therefore recommended that the District Court deny these Defendants' Motion to Dismiss.

### 4.      State Employees

The defamation claims against the employees of the Idaho Division of Veteran's Services[38] ("IDV") ("State Employees"), Patrick Teague and Steven Teague, to the extent sued in their official capacities, are barred by the Idaho Tort Claims Act ("ITCA") because the state of Idaho has not waived sovereign immunity for libel or slander claims, Idaho Code § 6-904(3), and Plaintiffs have not filed the notice of claim required by Idaho Code § 6-905.  *See Overman v. Klein*, 103 Idaho 795, 654 P.2d 888 (1982).  Additionally, defamation cannot serve as a basis for a 42 U.S.C. § 1983 claim, *Hopper v. Hayes*, 573 F. Supp. 1368, 1372 (D. Idaho 1983).  For these reasons, it is recommended that Plaintiffs' defamation claim against the State Employees in their official capacities be dismissed.

It is also recommended that the defamation claims against these employees in their personal capacities, *see, e.g.*, *Complaint* at ¶ 36, remain.  However, Plaintiffs' amended complaint shall set forth such claims against these Defendants by making individualized allegations with respect each Defendants' alleged defamatory conduct and not simply by making general allegations against all Defendants.

---

[38]  The IDV is listed in the Complaint as the Idaho State Veterans Service Program.

**REPORT AND RECOMMENDATION - 54**

5.        **League Defendants**

To the extent Plaintiffs seek to allege defamation claims against the individual League

Defendants, it is recommended that these claims remain, subject to being set forth more

particularly in an amended complaint.  If Plaintiffs file an amended complaint they should do

more than allege that these defendants generally "contributed" to Plaintiffs' defamation.  *See,*

*e.g.*, *Complaint*, ¶¶ 47, 82, 84 (Docket No. 1).  Rather, Plaintiffs shall make individualized

allegations of the defamatory conduct.

Moreover, Plaintiffs make no allegation of defamation against Defendants Gray and

Brown in the sections specifically relating to these Defendants.  Accordingly, it is recommended

that the District Court dismiss the defamation claims against these two Defendants, to the extent

Plaintiffs are attempting to assert such claims against them.  It is recommended that dismissal be

with leave to amend.

**G.        The Idaho Division of Veterans Services**

Plaintiffs stated in their response to the IDV's Motion to Dismiss that "the state cannot be

sued for Privacy Act violations, [and] Plaintiffs have not sued the state for anything else."

*Response to Memorandum of Defendants' Motion to Dismiss Idaho Division of Veterans*

*Services' Employees*, pp. 2, 3 (Docket No. 118).  For this reason, and based on the authority

cited by the IDV,[39] it is recommended that Plaintiffs' claims against the Idaho Division of

Veterans Services be dismissed, with prejudice.

---

[39] *See Memorandum in Support of Motion to Dismiss IDV and its Employees*, pp. 5-9
(Docket No. 97-2) (discussing the Eleventh Amendment's grant of sovereign immunity to states
and state employees sued in their official capacity and the Idaho Tort Claims Act's requirements
for bringing suit against the state and its employees).

**REPORT AND RECOMMENDATION - 55**

**H.      American with Disabilities Act**

Plaintiffs cite the American with Disabilities Act in their Complaint ("ADA"), *see Complaint*, p. 10 (Docket No. 1), but have alleged only that Defendants have "violated the purposes and intent of the American Disabilities Act." *See, e.g.*, *id.* at ¶ 159 (Docket No. 1). Specifically, Plaintiffs claim that each defendant "has violated Findings and Purpose of the American with Disabilities Act of 1990 Section 603 at Section 2 wherein: (1) 'To provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and at (4) 'To invoke the sweep of Congressional authority including the Power to enforce the Fourteenth Amendment.'" *See, e.g.*, *id.* at ¶ 52.  This section does not create a cause of action against Defendants, or a claim upon which relief may be granted, nor do any of Plaintiffs' allegations sufficiently set forth any facts indicating that Defendants have violated any of the enforcement provisions of the ADA.[40]  Accordingly, it is recommended that the District Court grant the Defendants' requests to dismiss the ADA claim from this action.

**1.      Federal Employees**

Although it has already been recommended that the District Court dismiss all claims against the Federal Agencies and Employees Acting in Their Official Capacities, an alternative basis for dismissal of the ADA claim against these Defendants is that the ADA does not provide a cause of action against the United States, federal agencies, or federal employees acting in their

---

[40]  Moreover, to bring a claim under the ADA, administrative remedies must first be exhausted.  *See Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1121 (9th Cir. 2005) (explaining that Title VII applies to ADA claims); *Brown v. City of Tucson*, 336 F.3d 1181, 1189 n.13 (9th Cir. 2005); 42 U.S.C. §§ 2000e-5(e)1 & 2000e-5(f)(1).  There is no allegation by Plaintiffs that they have met this requirement.

official capacity.  *County of St. Louis v. Thomas*, 967 F. Supp. 370, 376 (D.Minn. 1997); 42

U.S.C. § 12131(1)(A)-(B) (defining public entities covered by the ADA as any state or local

government); *Whaley v. United States*, 82 F. Supp. 2d 1060, 1061 (D.Neb. 2000) (explaining that

"[a] suit against a federal agency or against an officer of a federal agency in his or her official

capacity constitutes a suit against the United States, and is not permitted under the ADA").

### 2.      IDV and State Employees

The ADA, Title II, applies to states, providing that they may not discriminate on the basis

of disability in providing benefits under state programs, *see United States v. Georgia*, 546 U.S.

151 (2006); however, because Plaintiffs have not alleged that they have been denied any state

benefit or participation in a state program, it is recommended that District Court also dismiss the

ADA claim on this basis to the extent it seeks recover from the IDV or its employees.  *See Safe*

*Air For Everyone v. State*, Case No. CV 06-68-N-EJL (D. Idaho Nov. 14, 2006) (citing

*Alexander v. Choate*, 469 U.S., 287, 302 (1985) and *Crowder v. Kitagawa*, 81 F.3d 1480, 1484

(9th Cir. 1996) for the principle that the state's action must deny disabled individuals of

meaningful access to state services, programs, and activities because of a plaintiff's disability).

## I.      The Privacy Act

Plaintiffs allege in their Complaint that Defendants have violated the Privacy Act of

1974.[41]  *Complaint*, p. 10 (Docket No. 1).  Plaintiffs later clarify in their briefing that "[t]here

have been no Privacy Act claims alleged against federal employees in their individual or official

---

[41]  The Privacy Act, 5 U.S.C. § 552a, generally "bars disclosure of personal information, absent consent of the individual affected."  *Fed. Labor Relations Auth. v. U.S. Dept. of Veterans Affairs*, 958 F.2d 503, 505 (2d Cir. 1992).

**REPORT AND RECOMMENDATION - 57**

capacities."[42]  *Response Brief in Support of Motion and Supplemental Motion in Opposition to United States Attorneys' Motion to Dismiss Federal Employees in Their Individual Capacity*, p. 6 (Docket No. 101).  Plaintiffs also have acknowledged that "state agencies cannot be sued for Privacy Act violations," *Response to Memorandum of Defendants' Motion to Dismiss Idaho Division of Veterans Services' Employees*, pp. 2, 3 (Docket No. 118), and that they have "no valid Privacy Act claims against the state or individuals involved."[43]  *Response to Memorandum of Defendants' Motion to Dismiss Idaho Division of Veterans Services' Employees*, pp. 3, 15 (Docket No. 118).  For this reason, it is recommended that the District Court dismiss any Privacy Act claims asserted against all Defendants except the federal agencies.

### 1.    Plaintiff Swisher's Request Regarding His Military Records

The Federal Agency Defendants request that Plaintiff Swisher's request for a correction of his military records, *see Complaint*, ¶ ¶ 178, 193 (Docket No. 1), be dismissed because he has not exhausted his administrative remedies.  Although an "individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters," this may be done only after a determination is made "not to amend [the] individual's record in accordance with his request," or the failure to make such review.  5 U.S.C. §

---

[42]  This clarification is consistent with cases holding that the Privacy Act does not authorize suit against federal employees in their individual capacities.  *See, e.g.*, *Hewitt v. Grabicki*, 794 F.2d 1373, 1377 & n.2 (9th Cir. 1986); *Windsor v. Tennessean*, 719 F.2d 155, 160 (6th Cir. 1984); *Brown-Bey v. United States*, 720 F.2d 467, 469 (7th Cir. 1983).

[43]  Case law and the statute support Plaintiffs' change in position.  *See* 5 U.S.C. 552a(g)(1) (providing that "[w]henever any *agency* . . . fails to comply. . . the individual may bring a civil action against the agency. . .") (emphasis added); *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999) (explaining that "[t]he civil remedy provisions of the statute do not apply against private individuals, *state agencies,* private entities, or state and local officials") (citations and internal quotation marks omitted)).

**REPORT AND RECOMMENDATION - 58**

552a(d)(3), (g))(1).  In short, Plaintiff Swisher cannot seek a correction of his record until he has first presented the claim to the appropriate agency to consider whether his records should be amended.  *See Hill v. United States Air Force*, 795 F.2d 1067, 1069 (D.C. Cir. 1986).

Neither the Complaint nor Plaintiffs' briefing contain any assertion that Swisher has petitioned for administrative review of his record with the Board for Correction of Naval Records.  *See* 10 U.S.C. § 1552; 5 U.S.C. § 701 *et seq.*; *Miller v. Lehman*, 801 F.2d 492, 497 (D.C. Cir. 1986).  For this reason, it is recommended that the District Court dismiss Plaintiffs' request for a correction of his military record.

### 2.      Federal Agencies' Request for More Definite Statement

Although Plaintiffs detail the alleged Privacy Act violations in their briefs, *see, e.g.*, *Response to Idaho Observer, Harkins, Hinkson, and Towerton's Motion to Dismiss*, p. 3 (Docket No. 111), they do not do so in their Complaint.  The Federal Defendants have requested that Plaintiffs file an amended complaint to provide a more definite statement of their Privacy Act claims.  This appears reasonable considering that the Complaint is sixty-three pages in length and sets forth several allegations against over forty defendants.  Moreover, Plaintiffs have stated that they have "little, if any, objections to filing an Amended Complaint if the court wishes." *Reply to Defendant's Response to Plaintiff's Response to Motion to Dismiss Federal Agencies*, p. 3 (Docket No. 71).  For these reasons, it is recommended that the District Court grant Defendants' request for a more definite statement of Plaintiffs' Privacy Act Claims.

In amending their Complaint, Plaintiffs should consider that it is not a violation of the Privacy Act to disclose information if authorized by the person to whom the record pertains (here, Swisher), 5 U.S.C. 552a(b), or to share information that is disclosable under the Freedom

**REPORT AND RECOMMENDATION - 59**

of Information Act, *see Federal Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958

F.2d 503, 505 (2d Cir. 1992) (explaining that the "Privacy Act excepts from its prohibition

against disclosure information that must be made available under the [FOIA]"), or to provided to

members of the public information regarding the dates of military service and receipt of medals

or awards, *see* 32 C.F.R. 310.41(c)(2).

Additionally, the Department of Defense (of which the Marine Corps is a part) may

disclose information to the National Archives and Record Administration pursuant to 32 C.F.R.

310.41(h) and 5 U.S.C. § 552a(b)(6). Moreover, "[t]he head of any Federal department or

agency shall provide such information to the Secretary [of the VA] as the Secretary may request

for purposes of determining eligibility for or amount of benefits, or verifying other information

with respect thereto." 38 U.S.C.A. § 5106. To the extent any of Plaintiffs' Privacy Act claims

fall within these categories, Plaintiffs shall exclude them from their amended complaint.

## V.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs seek a preliminary injunction requiring Defendants Idaho Observer, Harkins,

Hinkson, and their agents or employees, to refrain from continued publications about Plaintiffs

and to remove all information about Plaintiffs that they have posted on their website or have

encouraged others to post on website. *Memorandum in Support of Plaintiffs Motion for

Preliminary Injunction*, p. 7 (Docket No. 117-2). Plaintiffs also ask that Defendants be

restrained from making any contact with Plaintiffs except through their attorneys or coming

within 100 yards of Plaintiffs or their property lines. *Id.* at pp. 7-8.

**REPORT AND RECOMMENDATION - 60**

Although it has been recommended that the defamation claim against these Defendants survive at this stage of the proceedings, it does not appear likely that Plaintiffs will be able to succeed on the merits.  Defendants have made a strong argument that their publications may be protected by the newspaper publication privilege.  *See* Idaho Code 6-713.  As discussed above, it is unclear whether Plaintiffs will be able to state any claim for relief.  Because Plaintiffs have not demonstrated that they are likely to succeed on the merits of this case or that serious questions exist on the merits, it is recommended that the District Court deny Plaintiffs' Motion for Preliminary Injunction (Docket No. 123).  *See Self-Realization Fellowship Church v. Ananda*, 59 F.3d 902, 913 (9th Cir. 1995) (explaining that "[a] moving party is entitled to injunctive relief if it demonstrates that it is likely to succeed on the merits and may suffer irreparable injury, or that serious questions exist on the merits and the balance of hardships tips in its favor").

Additionally, it is recommended that the motions to strike the affidavits of Plaintiff Swisher filed to support the Motion for Preliminary Injunction, filed by Defendants Idaho Observer, Don Harkins, and Roland Hinkson (Docket Nos. 128 & 130), be denied as moot because, even considering the information in the affidavits, it is not sufficient to demonstrate that Plaintiffs are likely to succeed on the merits, and the Court has recommended denying the Motion for Preliminary Injunction that Swisher's affidavits support.

**REPORT AND RECOMMENDATION - 61**

**VI.**

**CONCLUSION**

In summary, if the District Court adopts these recommendations there will be no claims remaining against the federal employees in either their official or personal capacities.  The only claims remaining against the federal agencies would be those under the Privacy Act, and Plaintiffs will be required to file an amended complaint setting forth those claims with more particularity.

The defamation claim would remain against Defendants Hoyt, the Idaho Observer, Don Harkins, Roland Hinkson, Bruce Towerton, Steven Teague, Patrick Teague, and the League Defendants (except Defendants Gray and Brown).  The ADA, civil conspiracy, 42 U.S.C. § 1983, and due process claims against all Defendants would be dismissed.  The League Defendants also would face a potential breach of contract claim.

Plaintiffs would be allowed to amend their Complaint to the extent noted above and in accord with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 15(a).  Plaintiffs are cautioned, however, that they should include only the claims the Court has identified as sufficient to state a claim for relief, i.e., the Privacy Act, defamation, and breach of contract claim, and only against the defendants identified.

**VII.**

**RECOMMENDATION**

Based on the foregoing, it is recommended to the District Court that:

1.      The Motion to Dismiss Federal Agencies and All Federal Employees in Their

Official Capacity and for More Definite Statement (Docket No. 16) be

**REPORT AND RECOMMENDATION - 62**

GRANTED, in part, and DENIED, in part, as set forth above.  Specifically, all claims against the federal agencies and the federal employees in their official capacity[44] should be dismissed except Plaintiffs' Privacy Act Claims. Additionally, Defendants' request for a more definite statement of Plaintiffs' Privacy Act claims should be granted and Plaintiffs required to file, on or before October 31, 2007, an amended complaint setting forth their Privacy Act claims in a manner that designates which particular Defendants violated the Act and the general manner in which each Defendant violated the Act.

2.      Plaintiffs' Motion to Deny U.S. Attorney's Motion to Dismiss Federal Agencies and All Federal Employees (Docket No. 58) be DENIED in all respects except as it relates to Plaintiffs' Privacy Act claims.

3.      Defendants' Motion to Dismiss Federal Employees Sued in Their Individual Capacity (Docket No. 73) be GRANTED.

4.      The Motion to Dismiss filed by Defendant Wesley Hoyt (Docket No. 61), be GRANTED in part and DENIED in part.  Specifically, the Motion should be granted as to all claims except the defamation claim.  This defamation claim should be included in any amended complaint.

---

[44]   The Defendants within this category are: Department of Veterans Affairs ("VA"); the National Personnel Records Center; John Snow, the former United States Secretary of the Treasury; R. James Nicholson, Director of the Department of Veterans Affairs; General John Hagee, Chief Officer of the United States Marine Corps; VA employees K.E. Collins, Monty Stokes, and Bill Lamb; U.S. Marine Corps officers and civilian employees Lt. Col. Karen Dowling, Chief Warrant Officer W.E. Miller, Williams Swarens, Ms. Harper, and G. Michalick; and National Archives and Records Administration employee Bruce R. Tolbert.

**REPORT AND RECOMMENDATION - 63**

5.      The Motion to Dismiss filed by Duane Anderson, Michael A. Blum, Dick Brown, Dennis Dressler, Barry Georgopulos, Robert Gilmore, A.M. Gray, Paul Hastings, Helen Hicks, Frank Kish, Dave Lewis, Mike Meade, the National Marine Corps League, Bill Snow, and Vic Voltaggio (Docket No. 63) be GRANTED in part and DENIED in part.  Specifically that it be granted as to all claims except the defamation claim and that Plaintiffs be allowed to file an amended complaint setting forth a breach of contract claim against the League.  The defamation claims against Defendants Gray and Brown should be dismissed and Plaintiffs be required to re-state their defamation claims against all other League defendants in their amended complaint.

6.      The Motion to Dismiss filed by Don Harkins, Roland Hinkson, the Idaho Observer, and Greg Towerton (Docket No. 75) be GRANTED in part and DENIED in part.  Specifically that it be granted as to all claims except the defamation claim.

7.      The Motion to Dismiss filed by the Idaho State Veterans Service Program, Patrick D. Teague, and Steven Teague (Docket Nos. 97) be GRANTED in part and DENIED in part.  Specifically, that it be granted as to all claims except any defamation claims that may be properly plead against Defendants Patrick and Steven Teague in their personal capacities in an amended complaint.

8.      Plaintiffs' Motion for Preliminary Injunction (Docket No. 117) be DENIED.

**REPORT AND RECOMMENDATION - 64**

10. The Motions to Strike filed by Defendants Don Harkins, Roland Hinkson, the Idaho Observer, and Greg Towerton (Docket Nos. 128 & 130) be DENIED as moot.

11. Plaintiffs' Motion for Reconsideration (Docket No. 123) be DENIED as moot. Because the all of the claims against the federal employees in their personal capacities have been dismissed, an extension of the time for serving the Complaint and summons on these employees or a grant of the request to serve them by publication would provide Plaintiffs with no meaningful relief as they cannot maintain an action against these Defendants upon the claims asserted in the Complaint.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636 and District of Idaho Local Civil Rule 72.1. If written objections are not filed within the specified time, the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals may be waived.



DATED:  **September 24, 2007**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**REPORT AND RECOMMENDATION - 65**