Stephen R. Thomas, ISB No. 2326
Tyler J. Anderson, SIB No. 6632
MOFFATT, THOMAS, BARRETT, ROCK &
       FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone  (208) 345-2000
Facsimile  (208) 385-5384
srt@moffatt.com
tya@moffatt.com
13782.0183

Attorneys for Defendant National
Marine Corps League and Certain
Member Defendants

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELVEN JOE SWISHER and WALTER O. LINDSEY, <br><br>               Plaintiffs, <br><br> vs. <br><br> K.E. COLLINS, MIKE MEADE; PATRICK D. TEAGUE; STEVEN TEAGUE; JOSEPH VOLK; FRANK KISH; VIC VOLTAGGIO; DENNIS DRESSLER; BEN KEELEY; BRUCE R. TOLBERT; LT. COL. KAREN DOWLING; ROBERT GILMORE; BILL SNOW; DAVE LEWIS; JOHN DOE (Treasury Dept.-U.S. Agency); CHIEF WARRANT OFFICER W.E. MILLER; WILLIAM G. SWARENS; DUANE ANDERSON; MS. HARPER; MICHAEL A. BLUM; HELEN HICKS; A.M. GRAY; RICHARD "DICK" BROWN; JOHN DOES 1-15; JANE DOES 1-15; JOHN DOES 16-20; JANE DOES 16-20; NATIONAL MARINE CORPS LEAGUE (US corp.); IDAHO | Civil No. 06-338-S-BLW <br><br> **MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

OBSERVER; DON HARKINS;
G. MICHALICK; WESLEY HOYT;
ROLAND HINKSON; HON. R. JAMES
NICHOLSON (V.A.-US Agency); JOHN
SNOW (Treasury Dept.-US Agency);
NATIONAL PERSONNEL RECORDS
CENTER (US Agency); IDAHO STATE
VETERANS SERVICE PROGRAM (Idaho
State Agency); GENERAL JOHN HAGEE
(USMC-US Agency); AGENT MONTY
STOKES; AGENT BILL LAMB; PAUL
HASTINGS; GREG TOWERTON; BARRY
GEORGOPOLOUS; VETERANS
ADMINISTRATION AND/OR
DEPARTMENT OF VETERANS AFFAIRS
(US Agencies),

       Defendants.

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION.................................................................................................1

II. BACKGROUND ..................................................................................................2

  A.  The Marine Corps League. ....................................................................2

  B.  Plaintiffs' Allegations Against the League Defendants. .....................3

     1.  The Complaint and Amended Complaint................................3

     2.  The Second Amended Complaint. ...........................................5

III. LEGAL STANDARD ..........................................................................................7

IV. ARGUMENT .......................................................................................................8

  A.  Summary Judgment on Plaintiffs' Breach of Contract Claims Is
      Appropriate. ............................................................................................8

     1.  The League is the final arbiter of disputes regarding membership. ......8

     2.  The League complied with its by-laws. ...................................9

     3.  Plaintiffs' disciplinary proceedings comply with concepts of
         fundamental fairness, good faith, and natural justice. ........12

     4.  The League has a right to exclude plaintiffs...........................14

  B.  Summary Judgment on Plaintiff's Defamation Claims Is Appropriate.........15

V.  CONCLUSION ...................................................................................................20

Client:1105495.1

## TABLE OF CASES AND AUTHORITIES

**Page**

### Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)......................................................................................... 7

*Aspell v. Am. Contract Bridge League*,
122 Ariz. 399, 595 P. 2d 191 (Ct. App. 1979).............................................. 18

*Baker v. Burlington Northern, Inc.*,
99 Idaho 688, 587 P.2d 829 (1978)................................................................ 17

*Barfield v. Florida Yacht Club*,
106 So. 2d 207 (Fla. Dist. Ct. App. 1958) .................................................... 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................... 7, 8

*City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*,
838 F.2d 268 (8th Cir. 1988) ........................................................................ 7

*Donovan v. Travers*,
285 Mass. 167 (1934) .................................................................................... 13

*Eustace v. Dickey*,
240 Mass. 55 (1921) ...................................................................................... 13

*Everglades Protective Syndicate, Inc. v. Makinney*,
391 So. 2d 262 (Fla. Dist. Ct. App. 1980) ......................................... 8, 9, 15

*Hall v. Bellmon*,
935 F.2d 1106 (10th Cir. 1991) .................................................................... 7

*Johnson v. Cambridge Indus., Inc.*,
325 F.3d 892 (7th Cir. 2003) ........................................................................ 7

*Kirk v. Jefferson County Med. Society*,
577 S.W.2d 419 (Ky. Ct. App. 1978) ........................................................... 12

*Laughton v. Crawford*,
68 Idaho 578, 201 P.2d 96 (1948).................................................................. 17

*Loeb v. Geronemus*,
66 So. 2d 241 (Fla. 1953)............................................................................... 18

Client:1105495.1

*Miniero v. Craven*,
Slip Copy, 2008 WL 1994871 at *2 (D. Idaho May 6, 2008) ...................................... 8

*New York State Club Ass'n, Inc. v. City of New York,*
487 U.S. 1, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988) .................................... 15

*Preston v. Land,*
220 Va. 118, 255 S.E.2d 509 (1979) ........................................... 18

*Reed v. Quatkemeyer*,
647 So. 2d 172 (Fla. Dist. Ct. App. 1994) ..................................... 8

*Richards v. Morison*,
229 Mass. 458 (1918) ........................................................... 12, 13

*Richeson v. Kessler*,
73 Idaho 548, 255 P.2d 707 (1953) ........................................... 18

*Roberts v. United States Jaycees*,
468 U.S. 609 , 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984) ............................ 15

*Rodell v. Nelson*,
113 Idaho 945, 750 P.2d 966 (Ct. App. 1988) ..................................... 10

*Snay v. Lovely*,
276 Mass. 159 (1931) ........................................................ 13

*United States v. Hinkson*,
526 F.3d 1262 (9th Cir. 2008) ......................................... 2, 14, 20

*United States v. Simons*,
129 F.3d 1386 (10th Cir. 1997) ........................................... 7

**Statutes**

42 U.S.C. § 1983 ............................................................. 4

42 U.S.C. § 1985 ............................................................. 4

FED. R. CIV. P. 56 .......................................................... 7, 8

**Miscellaneous**

58 AM. JUR. 2D *Notice* § 31 (2007) ........................................... 10

Client:1105495.1

# I.    INTRODUCTION

*Pro se* plaintiffs Elven Swisher and Walter Lindsey ("Plaintiffs") filed this lawsuit against several defendants, including the National Marine Corps League (the "League") and a number of its members[1] (collectively "League Defendants").  Plaintiffs' Second Amended Complaint – Part 1 of 5 (CR 168) ("Second Amended Complaint") is directed specifically toward the League Defendants and attempts to plead two counts: breach of contract and defamation.  Both of these counts focus on the same central point: Swisher claims that League improperly expelled him for lying about his combat record and that the League Defendants falsely stated that Swisher misrepresented his military service.  In essence, these claims rest on Swisher's assumption that he has never lied about his military record and has always told the truth regarding his past service as a U.S. Marine.  Put differently, if Swisher *had* misrepresented his combat history, Plaintiffs' claims fail because the League Defendants would be justified in expelling him from the League and any statements impugning Swisher's claimed military record would be true and therefore provide an absolute defense to defamation.

Since the filing of this action in August 2006, the falsity of Swisher's claimed military record has been conclusively established in two courts of law.  First, on April 9, 2009, in Case No. CR-07-182-S-BLW, Swisher was convicted by a jury on four criminal counts, including: (1) knowingly wearing Armed Forces decorations and medals without authority, (2) willfully and knowingly making materially false or fraudulent representations, (3) willfully and knowingly making or using a false writing or document in an effort to obtain VA benefits to which he was not entitled, and (4) presenting false testimony to the Department of Veterans Affairs to obtain

---

[1] Those members are Mike Meade, Frank Kish, Vic Voltaggio, Dennis Dressler, Robert Gilmore, Duane Anderson, Michael A. Blum, Helen Hicks, Paul Hastings, Barry Georgopulos, Dave Lewis, and Bill Snow.

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 1**                                    Client:1105495.1

benefits to which he was not entitled.  On January 5, 2009, this Court imposed a prison sentence on Swisher.  Earlier, on May 30, 2008, the Ninth Circuit issued a decision finding that Swisher lied under oath and forged documents when it comes to his military service.  *United States v. Hinkson*,  526 F.3d 1262, 1297 (9th Cir. 2008).  In light of these two court proceedings regarding the veracity of Swisher's claimed combat history and, as demonstrated below, there is no record evidence to warrant a trial of any claim alleged by Plaintiffs.  Summary judgment in favor of the League Defendants is therefore appropriate.

The League also notes that several other defendants in this action have moved for summary judgment.  Given the overlap in the allegations aimed at <u>all</u> defendants to this action, the League therefore joins in those respective filings as appropriate.

## II.      BACKGROUND

League Defendants incorporate by reference their Statement of Undisputed Facts filed contemporaneously herewith and provide the Court with the following additional background regarding the League, its history, and the nature of Plaintiffs' claims against the League.

### A.      The Marine Corps League.

The League was founded in 1923 and was federally chartered by an Act of the Seventy-Fifth Congress of the United States of America, signed and approved by President Franklin D. Roosevelt on August 4, 1937.  The League is the only federally chartered Marine Corps related veterans organization in the United States.  Since its earliest days, the League has enjoyed the support and encouragement of the active duty and reserve establishments of the United States Marine Corps.  Today, the League maintains a membership of nearly 61,000 and is one of the few Veterans organizations that experiences increases in its membership each year.

The League is headed by an elected National Commandant, with 14 elected National Staff Officers who serve as trustees.  The National Board of Trustees coordinates the efforts of 48 department, or state, entities and the activities of over 900 community-based detachments located throughout the United States and overseas.  The day-to-day operations of the League are under the control of the National Executive Director, Michael Blum, who holds the responsibility for the management and direction of all programs, activities, and affairs of the League, as well as supervising the National Headquarters staff.  The League's mission statement provides:

**Mission Statement**

Members of the Marine Corps League join together in camaraderie and fellowship for the purpose of preserving the traditions and promoting the interests of the United States Marine Corps, banding together those who are now serving in the United States Marine Corps and those who have been honorably discharged from that service that they may effectively promote the ideals of American freedom and democracy, voluntarily aiding and rendering assistance to all Marines and former Marines and to their widows and orphans; and to perpetuate the history of the United States Marine Corps and by fitting acts to observe the anniversaries of historical occasions of particular interest to Marines.

**B.      Plaintiffs' Allegations Against the League Defendants.**

The gravamen of Plaintiffs' claims against the League Defendants relates to the change of their membership status with the League.  Specifically, Plaintiffs allege that they were disciplined by the League such that their membership was either suspended or terminated in alleged violation of the League's by-laws following a hearing they were afforded on April 1, 2006, in Lewiston, Idaho.  Importantly, although Plaintiffs unnecessarily denigrate the April 1, 2006, hearing, they do not deny that such hearing indeed took place.

**1.      The Complaint and Amended Complaint.**

On August 24, 2006, Plaintiffs Elven Joe Swisher and Walter O. Lindsey commenced this action by filing a 65-page Complaint and Demand for Trial by Jury ("Original Complaint").

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 3**

That Original Complaint purported to state at least nine counts[2] against more than 45 defendants. In the Original Complaint, Plaintiff Swisher alleged that he was expelled because of a dispute regarding the accuracy of his claimed military record or service in the United States Marine Corps.  *See* (CR 1) ¶ 125.  Plaintiff Swisher also alleged that the dispute over the accuracy of his military service in the mid-1950's traces back to his prior testimony during a federal criminal trial in March 2005, styled, *United States of America v. David Roland Hinkson*, CR 04-27-S-RCT.  *Id.*, ¶¶ 19-20.  Following Plaintiff Swisher's testimony at the criminal trial, an issue arose regarding the veracity of his claims about his military service, including the awards and medals he claims he was entitled to receive as a result of that service—which medals he wore during his *Hinkson* trial testimony.  *Id.*, ¶ 21.  Plaintiff Swisher alleged that during the April 1, 2006, hearing before a National Hearing Board of the League, defendant Paul Hastings provided the League Board, *inter alia*, with information that suggested Plaintiff Swisher "could not have received the Navy and Marine Corps medal for heroism because it didn't exist until the 1990's . . ." *Id.*, ¶ 125.  As a result of the April 1, 2006, hearing, plaintiff Swisher alleges he was expelled from the League for life.  *Id.*, ¶ 183.  Plaintiff Lindsey alleges that, as a result of the same April 1, 2006, hearing, he was suspended from the League for two years for "defending" Plaintiff Swisher.  *Id.*, ¶¶ 183 and 186.

The League Defendants moved to dismiss the Original Complaint (CR 63).  The motion was granted in part and denied in part.  Specifically, the Honorable Larry M. Boyle issued a Report and Recommendation on September 24, 2007 (CR 136) recommending dismissal for the

---

[2] Plaintiffs pleaded causes of action under: (1) 42 U.S.C. § 1985, (2) 42 U.S.C. § 1985(3), (3) 42 U.S.C. § 1983, (4) Due Process, (5) unspecified Constitutional rights, (6) procedural violations of the Marine Corps League bylaws, (7) Americans with Disabilities Act, (8) Privacy Act, and (9) defamation.

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 4**

vast majority of the counts against all defendants, but for defamation.  Judge Boyle also

recommended that Plaintiffs "be allowed to amend their Complaint to set forth a claim against

the League for the alleged violation of its by-laws."  *Id.* at 48-49.  Following objections by

Plaintiffs, this Court considered and overruled those objections, adopted the Report and

Recommendation in its entirety and issued a Memorandum Decision and Order Adopting Report

and Recommendation, filed March 10, 2008 (CR 156).  This Court also ordered Plaintiffs to file

an Amended Complaint in strict compliance with the foregoing two orders within 30 days.

On April 9, 2008, Plaintiffs filed their Amended Complaint, committing multiple

violations of the Court's prior orders.  The League Defendants moved to strike the Amended

Complaint (CR 164), which this Court granted in part and denied in part on December 16, 2008,

stating:

> [T]he Court agrees to strike any allegations by Swisher that he was defamed by
> accusations that he lied during the *Hinkson* trial.  *See United States v. Hinkson*,
> 526 F.3d 1262 (9th Cir. 2008) (holding that Swisher was "conclusively shown . . .
> to be a forger and a liar . . . ."). The Court will also strike any allegations that
> attempt to allege new claims, or re-allege dismissed claims.
>
> * * *
>
> NOW THEREFORE IT IS HEREBY ORDERED, that the . . . motions are
> granted to the extent they seek to strike all allegations in the second amended
> complaint that attempt to allege new claims (or re-allege dismissed claims) or
> allege that Swisher was defamed by accusations that he lied during the *Hinkson*
> trial.

*See* CR 214 at 3-4.

### 2.    The Second Amended Complaint.

While the League Defendants' motion to strike was pending, Plaintiffs made yet a third

(unauthorized) attempt at pleading by filing a five-part Second Amended Complaint.  *See* CR

168, 169, 170, 172, and 173.  Part 1 of the Second Amended Complaint (CR 168) sets forth the

allegations against the League Defendants and is now the document that governs the analysis of

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 5**                    Client:1105495.1

Plaintiffs' claims for purposes of summary judgment.  In the Second Amended Complaint, Plaintiffs attempt to allege two claims against the League Defendants: (1) breach of contract; and (2) defamation.

The focus of Plaintiffs' breach of contract claim lies on alleged procedural irregularities that took place in connection with the April 1, 2006, discipline hearing conducted by the League. Specifically, Plaintiffs contend that the procedures followed in connection with the April 1, 2006, hearing did not comply with the League's by-laws.  The subject matter of the April 1, 2006, hearing was to determine the appropriate discipline as a result of Swisher's false statements in the *Hinkson* trial regarding his military service. The vast majority of the allegations in the Second Amended Complaint focus on the April 1, 2006, hearing provided in connection with Swisher's expulsion from the League for lying about his combat record.  Plaintiff Lindsey's complaints regarding alleged violations of the League by-laws are non-specific and, for the purposes of this motion <u>only</u>, the League will assume, *arguendo*, that Lindsey's allegations parallel Swisher's.  However, for the reasons set forth below, no record evidence exists to support Plaintiffs' claims.

As for Plaintiffs' defamation claims, the focus again lies on statements made in connection with the April 1, 2006, disciplinary hearing.  Plaintiffs make several references to an unidentified "packet" of information relating to Swisher's combat history or lack thereof.  *See, e.g.,* Second Amended Complaint (CR 168) at 11, ¶ 49.  Viewing all facts in the light most favorable to Plaintiffs, this "packet" is assumed to contain documents that indicate Swisher's combat history and military service is not what he says it is.  In support of their allegations, Plaintiffs also attach several exhibits to the Second Amended Complaint that purportedly contain defamatory statements by the League Defendants.  Even assuming the attached exhibits are

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 6**

properly admitted pursuant to Federal Rule of Civil Procedure 56(e), none of that information

contains defamatory statements.

### III.   LEGAL STANDARD

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56.

Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." FED. R. CIV. P. 56(c).

Importantly, the "mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty

Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  Instead, "only material factual disputes preclude

summary judgment; factual disputes about immaterial terms are irrelevant." *Hall v. Bellmon*,

935 F.2d 1106, 1111 (10th Cir. 1991) (quoting *Anderson*, 477 U.S. at 248).  The substantive law

of a case determines which facts are material.  *United States v. Simons*, 129 F.3d 1386, 1388

(10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The United States Supreme Court has emphasized that summary judgment is a useful tool

for isolating and terminating factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986).  In plain terms, summary judgment "is the 'put up or shut up' moment in a

lawsuit, when a party must show what evidence it has that would convince a trier of fact to

accept its version of events." *Johnson v. Cambridge Indus*., *Inc*., 325 F.3d 892, 901 (7th Cir.

2003); *see also City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc*., 838 F.2d 268, 273

(8th Cir. 1988) (stating summary judgment motions "can be a tool of great utility in removing

factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that

really do raise genuine issues of material fact."). Rule 56(c) requires the Court to enter summary

judgment "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Miniero v. Craven*, Slip Copy, 2008 WL 1994871 at *2 (D. Idaho May 6, 2008) (quoting

*Celotex*, 477 U.S. at 322).

## IV.   ARGUMENT

### A.   Summary Judgment on Plaintiffs' Breach of Contract Claims Is Appropriate.

#### 1.   The League is the final arbiter of disputes regarding membership.

The governing body of a voluntary, private, recreational, or social club is the final arbiter

of the sufficiency of causes for expulsion of a member of the club. *Everglades Protective*

*Syndicate, Inc. v. Makinney*, 391 So. 2d 262 (Fla. Dist. Ct. App. 1980); *Reed v. Quatkemeyer*,

647 So. 2d 172 (Fla. Dist. Ct. App. 1994) (the governing body of a private social organization is

the final arbiter of the sufficiency of cause for expulsion).

In the *Everglades Protective Syndicate* matter, an individual expelled from membership

of a social club alleged that the termination of his membership "was made willfully, wantonly

and in bad faith in that the actual reason for the termination of his membership was other than

that alleged is unknown." 391 So. 2d at 265. In refusing to address the terminated club

members' claim, the Florida Appellate Court found that allegation to be a mere legal conclusion

that was insufficient to frame an issue for litigation and further stated:

> Even if there were factual allegations, however, it is difficult to see how a
> justiciable issue could be made.  The governing body of a private, social club "is
> the final arbiter of the sufficiency of causes for expulsion."  (Citation omitted).  It
> would appear that almost any reason would be a sufficient cause for expulsion if
> the governing body so determines.

*Id.*  To support its holding, the Florida Appellate Court looked to prior authorities, adding:

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 8**                                      Client:1105495.1

> We have, in America, no social castes but, each group has its own pattern of conduct and activity which it approves, and which it finds enjoyable and inoffensive to its members. Actions, conduct or activity which might be inoffensive to one group might be frowned upon by another. If the courts should be called upon to determine the reasonableness of charges for expulsion, then the action and decorum of the members of all clubs would of necessity be measured by the standard of action the particular Court hearing the controversy might himself or themselves find offensive or inoffensive, as the case might be. Courts should, therefore, not be required to look into the inner workings of private social clubs or the reasonableness of the charges upon which expulsion may be based.

*Id.*, citing *Barfield v. Florida Yacht Club*, 106 So. 2d 207, 211 (Fla. Dist. Ct. App. 1958).

Accordingly, judicial review of the League's decision to expel Plaintiff Swisher is not warranted here.

### 2.      The League complied with its by-laws.

Even if this Court chooses to engage in judicial review of the League's disciplinary action against the Plaintiffs—and it should not—the League complied with its By-Laws and Administrative Procedures in taking the action that it did regarding Plaintiffs' membership status.  Accordingly, there was no violation of the League's By-Laws and Administrative Procedures and, as such, there is no record evidence to support a breach of contract claim for Swisher or Lindsey.  Each of Plaintiffs' claimed violations of the By-Laws and Administrative Procedures will be analyzed in turn.

At the outset, it is important to note that, after a lengthy hearing lasting several hours on April 1, 2006, Plaintiff Lindsey admitted the charges against him and has served his two-year suspension from the League, which expired April 1, 2008.  *See* SUDF, ¶ 12.  As a result, it is unclear what remedy, if any, that Plaintiff Lindsey seeks from or can by provided by this Court.

Plaintiff Swisher complains that he did not receive either proper advance notice or specific notice of the charges against him in advance of the April 1, 2006, hearing.  *See* Second Amended Complaint (CR 168-1), ¶¶  4, 9 and 12.  Section 900 of the League's Administrative

Procedures require the Jurisdictional Judge Advocate to give at least 20 days' notice prior to convening a hearing board.  On February 22, 2006, Vic Voltaggio, the Jurisdictional Judge Advocate, composed and mailed letters via Certified Mail, Return Receipt Requested to both Swisher and Lindsey advising them of the charges against them and the date of the hearing.  *See* SUDF, ¶ 7.  Both letters state the specific charges against the Plaintiffs, as well as the specific By-Law subsections under which they were being charged, and identified the Hearing Board members.  *Id.*  Plaintiff Lindsey does not appear to challenge that he was timely notified of the hearing but, even if he did, there is no doubt that he was given ample notice.  And, although Swisher claims that he did not receive the February 22, 2006, letter, until March 30, 2006,[3] there is no dispute that several delivery attempts took place in an effort to get the notice letter in Swisher's hands.  Idaho law does not allow Swisher to ignore his mail and later claim lack of notice:

> It is a well-settled general principle that a person has no right to shut his eyes or ears to information and then to say that he lacked notice of the avoided facts. 58 Am. Jur. 2d Notice § 8 (1971).  As a corollary to that principle, a person may not avoid the effect of a written notice by refusing service of the notice.  Compare *State v. Quenzer*, 112 Idaho 756, 735 P.2d 1067 (Ct. App. 1987) (receipt of notice mailed pursuant to statute creates inference of knowledge of contents where sufficiency of notice is not challenged).

*Rodell v. Nelson*, 113 Idaho 945, 947, 750 P.2d 966, 968 (Ct. App. 1988).[4]  As a result, there has been no breach of the League's By-Laws or Administrative Procedures based on the alleged failure to give timely notice of the charges or to the specificity of the charges.

---

[3] This allegation is belied by Swisher's own letter dated March 27, 2006, to V.H. Voltaggio (attached as Exhibit 2H to the Second Amended Complaint (Docket No. 168-2)), wherein he states "I received your correspondence dated February 22, 2006 this a.m. (March 27, 2006) . . . ."

[4] *See also* 58 AM. JUR. 2D *Notice* § 31 (2007) ("A party may not escape the effect of the giving of a written notice by refusing to receive it when it is presented in person as a notice.").

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 10**

Plaintiffs contend that their suspensions pending the April 1, 2006, hearing were not in compliance with the League's By-Laws.  *See* Second Amended Complaint (CR 168), ¶ 6.  The focus of Plaintiffs' claim appears to be that the Jurisdictional Judge Advocate did not have authority to impose a suspension pending a disciplinary hearing.  However, to advance this claim, Plaintiffs ignore the plain language of Section 909 of the Administrative Procedures, which vests the Jurisdictional Judge Advocate with discretion to temporarily suspend membership pending final resolution of a charge.  *See* Voltaggio Decl., Ex. A, at AP 9-11, Section 909.  Accordingly, Jurisdictional Judge Advocate Voltaggio's temporary suspension was authorized and committed to his sound exercise of discretion.  As a result, there has been no breach of the League's By-Laws or Administrative Procedures based on Plaintiffs' pre-hearing suspensions.

Plaintiffs also offer the contrived claim for violation of the By-Laws and Administrative Procedures by contending that "no settlement attempts" were made in advance of the April 1, 2006, hearing as required by the League By-Laws.  *See* Second Amended Complaint (CR 168), ¶ 11.  Plaintiffs' claim fails for one simple reason: settlement attempts are not required under the By-Laws or Administrative Procedures, which "may" be explored by the Department Commandant or the Department Judge Advocate.  *See* Voltaggio Decl., Ex. A, at AP 9-6, Section 904(b).  Because settlement efforts are discretionary, not mandatory, any failure to engage in such discussions does not constitute a breach of any provision of the By-Laws or Administrative Procedures.

Finally, Plaintiffs also make the amorphous claim that the April 1, 2006, hearing was conducted in violation of the League's By-Laws, but do not identify a specific aspect of the hearing that was conducted in violation of the By-Laws or Administrative Procedures.  Given the

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 11**

lack of specificity in allegations of this type, it is impossible to respond.  As more fully demonstrated below, the proceedings afforded to Plaintiffs were lengthy, were taken seriously, and were fundamentally fair.  Accordingly, Plaintiffs' non-specific claim that the April 1, 2006, hearing was conducted in violation of the By-Laws must fail.

Summary judgment on Plaintiffs' claims for breach of contract is therefore appropriate. *See Richards v. Morison*, 229 Mass. 458, 461 (1918) (upholding member's expulsion because the club followed its own internal procedures established in its bylaws).

### 3.   Plaintiffs' disciplinary proceedings comply with concepts of fundamental fairness, good faith, and natural justice.

In those limited circumstances where a court of law does review the expulsion decisions of a private club, such review has focused on whether the expulsion proceedings were conducted in good faith and complied with basic concepts of fundamental fairness.  *See Richards v. Morison*, 229 Mass. 458 (1918).  Moreover, "substantial compliance" with a private clubs constitution or by-laws requires that the expulsion decision be upheld.  *See Kirk v. Jefferson County Med. Society*, 577 S.W.2d 419 (Ky. Ct. App. 1978) ("Ultimately, the rules of a private social club, however unfair, govern the relationship with its members.").

Many years ago, the Massachusetts Supreme Court stated that the following factors are relevant in analyzing whether expulsion proceedings complied with fundamental concepts of fairness, good faith, and natural justice.  *See Richards, supra*.  Specifically, a court should limit its review to the following general considerations:

> [1] whether the essential formalities required by the constitution and bylaws of the association have been complied with; [2] whether the proceedings have been regular; [3] whether the cause assigned is one sufficient in law to warrant expulsion; [4] whether the member has been given a fair chance to present his side of the controversy so as to satisfy the requirements of natural justice; [5]whether the decision is within the scope of the jurisdiction and whether it has been reached in good faith; and [6] whether the action appears to have been

within the exercise of sound reason or to have been capricious, arbitrary and
irrational.

*Id.* at 461. The reviewing court does not need to apply these considerations mechanically.  *Id.*

Additionally, a court must apply notions of fairness, good faith, and natural justice to the

procedures followed by the club, but not the substance of its decision.  *Id.*[5]

Finally, the undertakings of private clubs require substantially less formality than the

rights and procedures afforded to parties who appear before the a court of law.  *Id.*  For example,

some courts hold that a hearing is not required prior to removing a member.  *Eustace*, 240 Mass.

at 85.  Moreover, members of clubs do not enjoy an absolute right to counsel.  *Richards*, 229

Mass. at 466.  "[A] failure to secure all information available by a more acute and searching

investigation" will not render a private club's decision invalid.  *Snay*, 276 Mass. at 163-64.

Simply put, the decision of a club's tribunal stands, so long as it acted without bad faith and it

reached its decision by following the procedures it describes in its own bylaws.  *Donovan v.*

*Travers*, 285 Mass. 167, 174 (1934).

After even the most cursory review of the detailed procedural rules set forth in the

League's By-Laws or Administrative Procedures ensuring that a member have an opportunity to

be heard prior to being disciplined, it can hardly be said that such rules are unfair to Plaintiffs.

Moreover, those rules were fairly applied prior to the disciplining of Plaintiffs.  Although

Plaintiffs liken the April 1, 2006, hearing to the popularly used pejorative "kangaroo court," such

---

[5] *Snay v. Lovely*, 276 Mass. 159, 163-64 (1931) ("Courts do not sit in review of decisions
thus made by such officers, even though it may appear that there has been an honest error in
judgment, an innocent mistake in drawing inferences or making observations, or a failure to
secure all information available by a more acute and searching investigation"); *Eustace v.*
*Dickey*, 240 Mass. 55, 83 (1921) ("The discretion of those possessing the power of removal,
when applied in good faith, is not subject to re-examination in respect of its wisdom. The
judgment of the court cannot be substituted for the discretion of the constituted authorities, when
fairly exercised").

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 13**

characterization is far from truth or reality.  What Plaintiffs do not explain to the Court is that each of their hearings lasted several *hours*, they were represented by advocates, they were permitted to call witnesses, they were permitted to introduce evidence, they were permitted to make arguments, they were given leeway in the presentation of their arguments, and the proceedings were recorded.  *See* SUDF, ¶¶ 11-14.  As demonstrated above, the proceedings complied in every way with the League's By-Laws and Administrative Procedures.  The basis for the charge against Swisher was for his wearing of decorations he did not earn and his misstatements about his military record.  *See* SUDF, ¶ 6.  For this same behavior, Swisher has now been called a liar and a forger by the Ninth Circuit and has been convicted of felonies for which he will serve prison time.  *See Hinkson,* 526 F.3d at 1297-98.  There can be no doubt that the charge against Swisher warrants his expulsion.  In light of the many fair opportunities furnished to Plaintiffs to present their positions, the disciplinary proceedings complied with concepts of fundamental fairness, good faith, and natural justice.

Under these circumstances, there can be no claim for breach of contract and summary judgment is warranted.

### 4.   The League has a right to exclude plaintiffs.

In affirming an expulsion decision of a private club, several courts have noted a club's right to exclude such member or to not be associated with such member.  As the Florida Appellate Court stated:

> Neither due process nor concepts of fundamental fairness compel the conclusion that an individual is entitled to the association of one or more other individuals against his or their will.  A private, social club or any other voluntary group of individuals has the right to select its own members.  Membership in this context is not a constitutional right.  It is a bare privilege, terminable at the will of either the group or the individual.  On the foregoing basis we conclude that the third issue attempted to be raised by the original petition is illusory and therefore is not pertinent here.

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 14**

*Everglades Protective Syndicate*, 391 So. 2d at 267.  Moreover, as Justice O'Connor stated in her concurring opinion in *New York State Club Association, Inc. v. City of New York,* 487 U.S. 1, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988), "our cases also recognize an 'association's First Amendment right to control its membership,' acknowledging, of course, that the strength of any such right varies with the nature of the organization."  *Id.* at 108 S. Ct. 2237 (quoting *Roberts v. United States Jaycees*, 468 U.S. 609 , 104 S. Ct. 3244, 3257, 82 L. Ed. 2d 462 (1984)).

In addition to the reasons stated above, Plaintiffs' breach of contract claim must fail because the League has a right to exclude members or, put differently, a right not to be associated with ex-members such as Plaintiff Swisher.  Given the League's deep-rooted history and scores of members who served with valor and integrity, it goes without saying that the League should enjoy the absolute right to exclude Plaintiff Swisher lying about his military service.  This is especially true given the strong words the Ninth Circuit used for Swisher's conduct, as well as the fact that a jury of Swisher's peers found him guilty beyond a reasonable doubt for several so-called "stolen valor" offenses.

  **B.**  **Summary Judgment on Plaintiff's Defamation Claims Is Appropriate.**

Plaintiffs' claims for defamation share the same fate as their claims for breach of contract.  Although Plaintiffs make inflammatory accusations, the submitted exhibits do not support their contentions.  In short, there is no record evidence to warrant a claim for defamation and, as a result, summary judgment is appropriate.

In a prior Report and Recommendation (CR 136), Judge Boyle identified the elements of a claim for defamation as follows:

> A claim for defamation requires evidence of the following:
>
>   1. That the [defendant] published or communicated . . . a statement or statements about the [plaintiff]; 2. That the statements were

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 15**
<span style="float:right">Client:1105495.1</span>

false in a material respect; 3. That the [defendant] knew of the
falsity of the statements, or acted with reckless disregard for their
truth; 4. That the statements reflected adversely upon the
[plaintiff's] character, integrity, good name and standing in the
community . . . ; 5. That the defamatory comments caused damage
to the [plaintiff]; and 6. The nature and extent of the damages and
the dollar amounts thereof.

*Eggleston v. Klemp*, Case No. CV 06-218-N-EJL, 2007 WL 1468686, *2 (D.
Idaho May 18, 2007) (quoting *Student Loan Fund of Idaho, Inc. v. Duerner*, 951
P.2d 1272, 1279 (1997)).

*Id.* at 49.[6]

In Idaho, truth is an absolute defense to a claim for defamation.  Idaho Civil Jury

Instruction 4.88.1 states:

An essential element of defamation is that the information communicated
was false.  Consequently, if the information was, in fact true, there is no
defamation, regardless of defendant's motivation.

*Id.*  Not only does truth furnish a defendant with an absolute defense, the alleged defamatory

statements must also be false in some material fashion.  As Idaho Civil Jury Instruction 4.88.3

[6] Idaho Civil Jury Instruction 4.82 list the elements of defamation as follows:

INSTRUCTION NO. _____

In order to prove a claim of defamation, the plaintiff has the
burden of proving each of the following elements;

1.      The defendant communicated information
concerning the plaintiff to others; and
2.      The information impugned the honesty, integrity,
virtue or reputation of the plaintiff or exposed the plaintiff to
public hatred, contempt or ridicule; and
3.      The information was false; and
4.      The defendant knew it was false, or reasonably
should have known that it was false; and
5.      The plaintiff suffered actual injury because of the
defamation; and
6.      The amount of damages suffered by the plaintiff.

Available at http://www.isc.idaho.gov/rules/cv_juryinst.doc.

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 16**                           Client:1105495.1

states, "'[t]his means that the 'gist' or 'sting' of the communication, when taken in its entirety and in context, must be false.  It is not sufficient to provide that some insignificant detail is false if the 'gist' or 'sting' of the communication is otherwise true."  *Id.*, citing *Baker v. Burlington Northern, Inc.*, 99 Idaho 688, 587 P.2d 829 (1978); *Laughton v. Crawford*, 68 Idaho 578, 201 P.2d 96 (1948).[7]

Viewing the allegations of the Second Amended Complaint in the light most favorable to Plaintiffs, the focus of the defamation claims appears to be on statements made by League members that led to the expulsion of Swisher and suspension of Lindsey.  A thorough review of the exhibits to Plaintiffs' Second Amended Complaint does not reveal *any* statements made by a League member published to another that defamed either Swisher or Lindsey.  Simply put, Plaintiffs' have failed to meet their proof on their defamation claims.

Additionally, any statements made by League members acting in the course and scope of their membership with the League had to do with Swisher's false claims regarding his combat history and military service.  To the extent that Plaintiffs rely on statements regarding Swisher's false claims of military service, such statements are true and are therefore not actionable for defamation under Idaho law.  Along the same line, even if such statements are not true in every material way, the "gist" or "sting" of such statements *is* substantially true.  The parties to this action, the United States Government, the Ninth Circuit Court of Appeals, and this Honorable Court are all aware that Plaintiff Swisher has worn decorations that he did not earn and has told tall tales of a non-existent combat record.  It is no secret.  The word is out and the fact that the

---

[7] In addition to being unable to prove falsity of the alleged statements made by the League Defendants, Plaintiffs have not come forward with any evidence to demonstrate the League Defendants knew or had reason to know of the falsity of such statements, nor have Plaintiffs come forward with an allegation of specific facts or any admissible evidence that they have been damaged because of the alleged defamation.

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 17**

League members were among the first to take action against Swisher for his false claims of military service does not render such action defamatory.

The only specific claims of defamation in the Second Amended Complaint relate to a "packet" of material provided by a League member to Plaintiff Lindsey on June 5, 2005.  In an affidavit of Walter Lindsey produced in discovery, that "packet" of information purportedly contained:

> 1.  An [sic] District Court Affidavit by C.W.O. Miller; 2. An [sic] District Court Affidavit from W.J. Woodring; 3. A letter Addressed [sic] to Ben Keeley about Swisher from Lt. Col. Dowling; 4. A letter to Leslie [sic] Hoyt Law Office from Bruce Tolbert, Personnel Records; 5. A copy of reissued DD-214 (from Marine Corps Liaison Officer); 6.  A copy of DD-214 faxed from Greg Towerton; 7. A copy of letter of October 16, 1957 (from Marine Corps Liaison Officer) and 8. A copy of replacement (reissued) DD-214.

*See* Declaration of Tyler J. Anderson in Support of Motion for Summary Judgment at Exs. A and B.  This information obviously relates to Swisher's military service and cannot furnish the basis for a defamation claim.  In addition, the information contained in these materials provided the basis for the League's investigation and resulting expulsion proceedings against Plaintiff Swisher.  Several courts have held that statements made during club expulsion proceedings are privileged and will not support a claim for defamation.  *Aspell v. Am. Contract Bridge League*, 122 Ariz. 399, 595 P. 2d 191 (Ct. App. 1979); *Loeb v. Geronemus*,  66 So. 2d 241 (Fla. 1953); *Preston v. Land,* 220 Va. 118, 255 S.E.2d 509 (1979); *cf. Richeson v. Kessler*, 73 Idaho 548, 552-53, 255 P.2d 707, 709 (1953) ("defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will not support a civil action for defamation although made maliciously and with knowledge of its falsity.").

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 18**                    Client:1105495.1

Even still, the truth or falsity of any allegations regarding Swisher's claimed military history has been conclusively established.  As the Ninth Circuit held in addressing the "packet" of information identified above:

> ***To say that Swisher's credibility would fare poorly at a new trial is an understatement.***  At Hinkson's original trial, the jurors almost certainly had the impression that Swisher was a decorated combat veteran. . . .

> Defense counsel's efforts to impeach Swisher at the original trial focused on the fact that Swisher and Hinkson, who were once friends, were now bitter enemies who had sued and counter-sued each other.  ***On retrial, impeachment of Swisher would not be so limited.***  The parties now know conclusively, based on the Miller and Woodring affidavits, that Swisher forged his "replacement DD-214" and his purported "supporting letter" from Colonel Woodring, and that he used these forged documents in an effort to obtain veterans' benefits.  ***The parties also now know conclusively that Swisher never served in combat or earned any personal military commendations, and that he was not injured in battle overseas but in a private automobile accident near Port Townsend, Washington.  And they now know conclusively that Swisher lied under oath about participating in secret combat missions in North Korea, about being wounded in action, and about receiving a Purple Heart.***

> At a new trial, the government could put Swisher on the stand to testify, as he did at the original trial, that he told Hinkson that he was a decorated Korean War veteran who had killed "too many" people.  The government could then argue that Hinkson, believing these things, seriously solicited Swisher to kill three government officials.  ***But this time, on retrial, defense counsel and the government would know the*** truth.

> Defense counsel would impeach Swisher by asking if it was true that he was not in fact a Korean War veteran; that he had in fact not won a Purple Heart or other awards; that he had not in fact been injured in combat in Korea but rather in a private automobile accident; and that in fact he had lied to the Idaho Division of Veterans Services about his injuries and non-existent medals in an attempt to get military benefits to which he was not entitled.  ***That would already be bad enough, but it would get worse.***  Defense counsel would also ask Swisher whether, the last time he appeared in court to testify under oath against Hinkson, he wore a Purple Heart lapel pin to which he was not entitled, presented a forged "replacement DD-214," and otherwise lied about his military record.  ***This time, defense counsel would not be left defenseless if Swisher were to choose to lie in response to these questions because this time the government would also know the truth.***  If Swisher were to lie in response to any of the questions, the government would be obligated to correct the record.

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 19**

> *__In short, a new trial would be a disaster for the government.__*  A new jury would
> not only learn, as the first jury did, that Swisher and Hinkson, once friends, had
> become bitter enemies by the time Swisher testified.  *__It would also learn, as the__*
> *__first jury did not, that Swisher has no compunction about lying under oath to__*
> *__serve his ends, and that he had lied under oath and produced forged documents__*
> *__at Hinkson's first trial.__*

*Hinkson,* 526 F.3d at 1297-98 (emphasis added; citations omitted).

The remainder of Plaintiffs' defamation claims are non-specific in terms of time, place,
and specific content, but, as they do with other defendants in this action, Plaintiffs accuse certain
League members of saying that Swisher has engaged in blackmail, extortion or rape.  *See, e.g.*,
Second Amended Complaint (CR 168) at ¶ 29.  With regard to those allegations,  Plaintiffs have
not attached any evidence to support such claims to their Second Amended Complaint.
Moreover, despite Judge Boyle Report and Recommendation (adopted by this Court) requiring
Plaintiffs to provide detail and more definite statement regarding their defamation claims,
Plaintiffs have failed in three pleadings to allege the time, place, manner, hearers, and other
details regarding their defamation claims.  *See* CR 156 at 7-8.  Moreover, the exhibits attached to
Plaintiffs' Second Amended Complaint (CR 168-2) contain nothing defamatory.  In the absence
of evidence to support their allegations, Plaintiffs' defamation claims must be dismissed.

## V.    CONCLUSION

For all the foregoing reasons, the League Defendants respectfully request this Court to
grant summary judgment as to all claims filed by Plaintiffs.

DATED this 26th day of January, 2009.

MOFFATT, THOMAS, BARRETT, ROCK & FIELDS,
CHARTERED

By_____/s/_____
Tyler J. Anderson – Of the Firm
Attorneys for Defendant National Marine Corps
League and Certain Member Defendants

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 20**                          Client:1105495.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of January, 2009, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Maurice O. Ellsworth
Trevor L. Hart
PERRY LAW, P.C.
2627 W. Idaho St.
P.O. Box 637
Boise, ID 83701-0637
*Attorneys for Defendants Idaho Division of Veterans Services and Its Employees Patrick D. Teague, Steven Teague and Ben Keeley*

David P. Claiborne
RINGERT CLARK CHARTERED
455 S. 3rd
P.O. Box 2773
Boise, ID 83701-2773
*Attorneys for Defendants Idaho Observer, Don Harkins, Roland Hinkson, and Greg Towerton*

Victoria L. Francis
Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
P.O. Box 1478
Billings, MT 59103
*Attorneys for Defendants K.E. Collins, Bruce R. Tolbert, Lt. Col. Karen Dowling, Chief Warrant Officer W.E. Miller, William G. Swarens, Ms. Harper, G. Michaelick, R. James Nicholson, John Snow, National Personnel Records Center, General John Hagee, Agent Monty Stokes, Agent Bill Lamb, and Department of Veterans Affairs*

Mark S. Prusynski
MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
P.O. Box 829
Boise, ID 83701
*Attorneys for Defendant Wesley Hoyt*

AND, I HEREBY CERTIFY that on this 26th day of January, 2009, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to be served by the method indicated below, and addressed to the following non-CM/ECF Registered Participants:

Elven Joe Swisher
304 Garrett St.
Cottonwood, ID 83522
*Plaintiff Pro Se*

(X) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

**MEMORANDUM IN SUPPORT OF LEAGUE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 21**

Walter O. Lindsey                          (X) U.S. Mail, Postage Prepaid
3506 23rd St.                              ( ) Hand Delivered
Lewiston, ID  83501                        ( ) Overnight Mail
*Plaintiff Pro Se*                         ( ) Facsimile


   /s/
_____
Tyler J. Anderson